# PAUL HASTINGS

1(212) 318-6483
kevinbroughel@paulhastings.com

December 16, 2021

**VIA ECF**

Hon. Frederic Block
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Kent* v. *PoolTogether, Inc., et al.* - Case No. 1:21-cv-06025-FB-CLP (E.D.N.Y.)

Dear Judge Block:

We represent Defendant PoolTogether, Inc. ("Defendant") in this action. Defendant submits this letter to request a pre-motion conference concerning the motion it intends to file to compel Plaintiff Joseph Kent's claim to arbitration, or alternatively, to dismiss his Amended Complaint ("Compl."), Dkt. No. 18, pursuant to Rule 12(b)(1) and Rule 12(b)(6).

**General Background.** This case involves the PoolTogether protocol – a decentralized, autonomous cryptocurrency savings protocol that was created and principally resides on Ethereum, itself a decentralized "blockchain" computing platform for verifying and recording digital assets and transactions. Defendant operates a website (https://app.pooltogether.com/) that provides information relating to the PoolTogether protocol and also provides an interface through which a person can connect a cryptocurrency "wallet" to the protocol to make transfers of cryptocurrency directly into the protocol. The protocol is not owned, operated, or controlled by Defendant. Instead, the protocol's operations are governed by its original coding, which can only be changed by a majority vote of POOL governance token-holders.[1]

People deposit cryptocurrency into the protocol, which automatically routes those funds into "a 'liquidity pool' of cryptocurrencies from which unrelated people and entities can borrow or exchange [those same] cryptocurrencies," Compl. ¶ 26, generating "interest" on the amounts contributed. The interest in each pool is aggregated and distributed automatically to a randomly selected subset of contributors to that pool. Both the amounts disbursed to any particular contributor and the contributors who receive returns are determined randomly by the protocol. Defendant itself receives no returns and makes no money; at no time has it received any revenue in connection with deposits or their associated returns.[2]

---

[1] This governance token – "POOL" – has a circulating supply of over five million tokens, which are held by over 8,000 unique wallets. Defendant does not hold any POOL tokens.
[2] Plaintiff alleges that a portion of the returns accrued are kept in the protocol as a "reserve." *E.g.*, Compl. ¶ 27. In fact, the pool to which Plaintiff actually contributed does not have a reserve at all. **All** accrued returns in that pool are distributed to the randomly selected contributor. Regardless, the distinction is irrelevant as in no case does Defendant retain the funds; they are retained in the protocol for future distribution to contributors.

Hon. Frederic Block
December 16, 2021

Importantly, after a person deposits cryptocurrency into the protocol, the person may withdraw the cryptocurrency at any time, in full and without penalty. Compl. ¶ 35.[3] Nothing is risked or wagered. Moreover, due to the autonomous, decentralized nature of the protocol and the Ethereum network, neither Defendant nor any other person has control over the amounts contributed or the accrued returns. A person who deposits cryptocurrency into the protocol has not made a "purchase" like buying a lottery ticket. What the person has done is deposited cryptocurrency to a common pool – which can be withdrawn at any time – that is governed by computer code such that the deposits may generate a return to the contributor as described above.[4] And the protocol will continue to operate exactly as it has been coded until a majority of holders of POOL governance tokens vote otherwise.

**Plaintiff's Claim.** Plaintiff is a self-proclaimed "sophisticated" website developer and political activist who is a vocal critic of cryptocurrency.[5] Plaintiff voluntarily deposited $10 of cryptocurrency into the protocol in an apparent attempt to create standing to sue various companies and individuals for nearly $250,000,000 in alleged statutory damages on behalf of a nationwide putative class under N.Y. Gen. Oblig. Law (GOL) § 5-423, a lottery ticket statute that provides for "double" recovery of amounts paid for purchasing illegal lottery tickets.

**Bases for Defendant's Motion.** Defendant intends to file a motion to compel arbitration or dismiss Plaintiff's Amended Complaint for lack of Article III standing or failure to state a claim.

As a threshold matter, this case should be sent to arbitration pursuant to the Terms of Service to which Plaintiff agreed when making a deposit using Defendant's interface. When Plaintiff connected his cryptocurrency "wallet" to the protocol through that interface and deposited $10 in cryptocurrency into the protocol, he agreed to be bound by Defendant's terms, which conspicuously provided: "By connecting a wallet, you agree to PoolTogether's Terms of Service." The terms plainly provide that Plaintiff's claim against Defendant was first subject to informal dispute resolution and in any event can only be brought in arbitration (both of which Plaintiff disregarded). *See* https://pooltogether.com/terms/ (mandating informal dispute resolution for "any dispute with Pooltogether" and, failing that, binding arbitration "to resolve any claim, dispute, or controversy . . . arising out of or in connection with or relating to this Agreement"). As a "sophisticated" software engineer and experienced website developer, Plaintiff cannot plausibly claim, as he alleges, Compl. ¶ 39 n.1, that he was unaware of the terms.

---

[3] Plaintiff alleges contributors pay a "gas" fee to make a withdrawal. Compl. ¶ 35. This fee is not paid to Defendant and is not unique to the protocol. A gas fee is a general fee paid to Ethereum "miners" for processing and validating **any** transaction on the Ethereum network.

[4] A contributor who decides to participate otherwise might decide to retain the cryptocurrency in a wallet, earning no return.

[5] Compl. ¶ 2 ("He is gravely concerned that the cryptocurrency ecosystem—which requires the use of enormous amounts of electricity—is accelerating climate change and allowing people to evade financial regulations and scam consumers."); *id*. ("[Plaintiff] is a software engineer with an extensive background in building technology for nonprofits and political campaigns").

**PAUL HASTINGS**

Hon. Frederic Block
December 16, 2021

If the case is not compelled to arbitration, it should be dismissed because Plaintiff has suffered no injury sufficient to confer Article III standing. Plaintiff voluntarily deposited $10 in cryptocurrency that can be withdrawn any time. Neither his voluntary decision to deposit the $10 in cryptocurrency into the protocol, nor his voluntary decision to keep it there, accords him Article III standing to pursue his claims in federal court. This is precisely the type of "self-inflicted" injury for which courts rightly reject Article III standing. *See Taylor v. Bernanke*, No. 13-cv-1013, 2013 U.S. Dist. LEXIS 128533, at *32–33 n.5 (E.D.N.Y. Sep. 9, 2013) ("[Plaintiffs] have alleged nothing that would prevent them from withdrawing their deposits and taking their money to other banks. . . . [Their] decisions whether to deposit their money in a bank at all and with which bank to enter into a commercial relationship are personal choices. Self-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing."); *see also Bandler v. Town of Woodstock*, 832 F. App'x 733, 735 (2d Cir. 2020) (no standing where plaintiff "could have sought and obtained full reimbursement" of fee).

Nor does the availability of statutory damages under GOL § 5-423 bestow Plaintiff with Article III standing, as it is well-settled that the "availability of statutory damages, without any injury, does not automatically confer standing." *See Katz v. Donna Karan Int'l, Inc.*, No. 14-cv-740-PAC, 2017 U.S. Dist. LEXIS 75299, at *17–18 (S.D.N.Y. May 17, 2017). Likewise, none of the challenged conduct Plaintiff alleges – operation of the protocol, collection and distribution of funds, collection of "gas fees," etc. – is performed by Defendant, and therefore any alleged injury claimed by Plaintiff is not "fairly traceable to the challenged conduct" of Defendant. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

In addition, Plaintiff's claim for relief under GOL § 5-423 fails as a matter of law. GOL § 5-423 only permits recovery for a person who makes a "purchase" of a lottery ticket. *See* NY Penal Law § 225.00(10) ("lottery" is "an unlawful gambling scheme in which [] the players pay or agree to pay something of value"). Here, Plaintiff made no lottery "purchase" at all, but rather only deposited $10 in cryptocurrency into the savings protocol, which he can withdraw at any time. Additionally, even if the deposit was a "purchase," Plaintiff has not plausibly alleged that he made a purchase ***from Defendant*** so as to deem Defendant the "seller," which precludes relief against Defendant. *See Grover v. Morris*, 73 N.Y. 473, 477 (1878) (the statute "by necessary implication designates the seller as the person against whom the action is to be brought").

Moreover, even if this transaction can be deemed a "purchase" and Defendant a "seller," Plaintiff's claim still fails because where the alleged consideration claimed to form the lottery is not itself lost or at risk of loss due to the element of chance, there can be no lottery, even if prizes are also distributed by chance. *See Kohn v. Koehler*, 96 N.Y. 362, 367–68 (1884) (purchase of a bond – effectively a loan from the bond holder to the bond issuer – with incidental prize distributed by chance held not to be a lottery because the bond holder did not run a "risk of loss" by chance of the amount he paid). Plaintiff's $10 in cryptocurrency was never lost or at risk of loss upon chance, and thus Plaintiff's claim under GOL § 5-423 fails. *Id*. (no lottery unless plaintiff "hazards what he has paid upon the chances[] incident to a drawing by lot").

3

PAUL HASTINGS

Hon. Frederic Block
December 16, 2021

Respectfully submitted,

/s/ Kevin P. Broughel

Kevin P. Broughel
of PAUL HASTINGS LLP