**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

**VIA ECF**  December 16, 2021

Judge Frederic Block
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Kent v. PoolTogether, Inc., et al.*, 1:21-CV-6025-FB-CLP

Dear Judge Block:

Defendants Galaxy Digital Trading HK Limited and ParaFi Capital LP ("Galaxy" and "ParaFi") write under Rule 2A of Your Honor's Individual Motion Practices and Rules to request a conference or a briefing schedule on their motion to dismiss the Amended Complaint in the above-captioned case, *see* Dkt. 18 ("AC"), under Rules 12(b)(2) and (6).[1]

**I.   Background**

This is a putative class action brought by a software engineer who deposited $10 of cryptocurrency on the PoolTogether protocol—a decentralized, autonomous computing platform that is not owned, operated, or controlled by anyone plaintiff has sued. Defendants Galaxy and ParaFi have a maximally attenuated relationship with plaintiff's allegations. They manage cryptocurrency investment vehicles that deposited USDC (a digital stablecoin pegged to the U.S. dollar) onto the PoolTogether protocol in exchange for POOL, the protocol's governance token. This transaction was an exchange of one digital asset for another. Its upshot was that Galaxy and ParaFi became two of thousands of POOL tokenholders who participate in crowdsourced decision-making about the workings of the *protocol*. ParaFi also has a small equity investment in PoolTogether, Inc. Neither Galaxy nor ParaFi control PoolTogether, Inc.'s management, nor did they ever sell anything to the plaintiff. Plaintiff's attempt to deploy New York's lottery-ticket refund statute fails first and foremost for the reasons described in PoolTogether, Inc.'s letter (Dkt. 31): his deposit was not a ticket, the PoolTogether protocol is not a lottery under that statute, and plaintiff lacks standing to bring his claim. Plaintiff's failure to allege primary liability disables him from alleging secondary liability—a theory that is independently precluded by the text of the lottery-ticket refund statute. And beyond this fundamental defect, his Amended Complaint fails adequately to allege the Court's personal jurisdiction over Galaxy and ParaFi.

**II.   Plaintiff has not adequately alleged this Court's jurisdiction over Galaxy or ParaFi.**

Galaxy Digital Trading HK Limited is a Hong Kong private limited company, and ParaFi Capital LP is a Delaware limited partnership based in Connecticut. AC ¶¶ 10-11. Plaintiff has not

---

[1] This letter previews Galaxy and ParaFi's anticipated motion to dismiss in aid of the Court's determination whether a pre-motion conference will be "a useful expenditure of the parties' time." Court's Rules, 2A. Galaxy and ParaFi may make additional arguments, including in response to plaintiff's related letter and with respect to joining any arguments or motions made by other defendants. If the Court compels Plaintiff's claim to arbitration, *see* Dkt. 31 at 2, Galaxy and ParaFi are prepared to arbitrate Plaintiff's purported secondary liability allegations that are derivative of Plaintiff's claim for primary liability against PoolTogether, Inc.

**KAPLAN HECKER & FINK LLP**

2

met his burden of adequately alleging this Court's personal jurisdiction—governed in this diversity action by New York's long-arm statute—over either defendant. *See, e.g.*, *Eyeking, LLC v. JSS, LLC*, 321 F. Supp. 3d 326, 329 (E.D.N.Y. 2018). The Amended Complaint does not clearly identify, much less adequately allege, the purported basis for specific personal jurisdiction over Galaxy and ParaFi. *See* AC ¶ 15 (asserting that "all Defendants" "purposefully conspired to operate an illegal lottery by directing money into Brooklyn," "purposefully aided and abetted," and "conspired with others who conducted an illegal lottery in Brooklyn, New York"). Its allegations about Galaxy and ParaFi's purported investment do not mention New York, *see* AC ¶¶ 71, 74-75, except to conclude that the "public purpose of this investment was to facilitate PoolTogether's operation of a lottery based in Brooklyn, New York." *Id.* ¶ 76.

These allegations fall short of the showings needed to defend against a motion to dismiss. *See Eyeking*, 321 F. Supp. 3d at 329. "Transacting-business" jurisdiction requires two distinct showings: that Galaxy and ParaFi "transacted business within the state," and that plaintiff's claim "arise[s] from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Plaintiff's conclusory assertion that "all Defendants…direct[ed] money into Brooklyn," AC ¶ 15, falls far short of this mark. *See Berdeaux v. OneCoin Ltd.*, No. 19-cv-4074, 2021 WL 4267693, at *10 (S.D.N.Y. Sept. 20, 2021) ("wholly conclusory allegation" that defendants "directed their money laundering efforts" at a New York corporation "is patently inadequate"). Nor does (or could) Plaintiff allege that "at least one element" of his single claim "arises from [Galaxy and ParaFi's] New York contacts." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 341 (2012). Plaintiff's effort to allege conspiracy jurisdiction also fails. *See* AC ¶ 15. Nowhere does the Amended Complaint allege that "(a) [both] defendant[s] had an awareness of the effects in New York of [their] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant[s]." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442–43 (S.D.N.Y. 2008) (citation omitted); *see also In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 323 n.24 (S.D.N.Y. 2020) ("[T]he third prong of this test is designed to capture 'the traditional indicia of an agency relationship.'") (citations omitted). A bare allegation that Galaxy and ParaFi have "a financial interest in [PoolTogether, Inc.'s] operations" does not suffice. *Cf. City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 435–36, (S.D.N.Y. 2020) (parent-subsidiary relationship insufficient without more to establish personal jurisdiction over foreign parent without meaningful New York contacts and no benefit from doing business in New York).

**III.   There is no secondary liability under New York's lottery-ticket refund statute.**

As explained in PoolTogether, Inc.'s pre-motion letter, Dkt. 31, plaintiff has no standing to sue *anyone* under New York's lottery-ticket refund statute—and his complaint fails to state a claim under it, because he did not purchase a "ticket" for any "lottery" that it regulates. *See* N.Y. Gen. Obl. Law ("GOL") § 5-423. Plaintiff's inability to plead primarily liability extinguishes his claim for secondary liability. *See, e.g.*, *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999). But plaintiff's claim against Galaxy and ParaFi also fails for the separate reason that New York's lottery-ticket refund statute does not *ever* provide for aiding-and-abetting or conspiracy liability. The statute's scope is determined by its language. *See, e.g.*, *Wells v. Shearson Lehman/Am. Exp., Inc.*, 72 N.Y.2d 11, 22 (1988) (relying on "plain meaning of the statute" to interpret scope of General Obligations Law). The lottery-ticket refund statute's 44-word recovery provision is unequivocal. It allows recovery from a single kind of defendant: "the person to whom"

a qualifying "payment or delivery was made."  GOL § 5-423; *Grover v. Morris*, 73 N.Y. 473, 477 (1878) (confirming this statute "designates the seller as the person against whom the action is to be brought").

The statute does not expressly provide for secondary liability and cannot fairly be read to imply it.  In *Pinter v. Dahl*, 486 U.S. 622 (1988), the Supreme Court considered a similar statute providing for the rescission of sales of unregistered securities. *See* 15 U.S.C. § 77*l*(a) ("Any person who offers or sells [an unregistered security]…shall be liable…to the person purchasing such security from him…to recover the consideration paid for such security with interest thereon…"). *Pinter* read "seller" to preclude secondary liability because "§ 12(1)'s failure to impose express liability for mere participation in unlawful sales transactions suggests that Congress did not intend that the section impose liability on participants collateral to the offer or sale." *Id.* at 650.

A federal court should be especially reluctant to expand a state statute's reach by novel interpretation: as Judge Newman warned, "it would be inappropriate for a federal court to reach out and take jurisdiction over a cause of action that can only succeed by giving the state statute an interpretation far different from the plain meaning of the words the state legislature used." *Pandis v. Sikorsky Aircraft Div.*, 431 F. Supp. 793, 796 (D. Conn. 1977) (dismissing state-law claim); *see also Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 193 (2d Cir. 2009) ("Our cardinal function in interpreting a New York statute is to ascertain and give effect to the intent of the legislature."). The New York Legislature "knew how to impose aiding and abetting liability when it chose to do so." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994).  A nearby provision in the same General Obligations Law voids certain lottery-related property transfers including "for the purpose of aiding and assisting in such lottery," showing how the New York legislature speaks when it means to provide for secondary liability.  *See* GOL § 5-415; *cf. Central Bank*, 511 U.S. at 178-80 (looking to other provisions of the Securities Act and Exchange Act to conclude that § 10(b) does not imply secondary liability).  And other New York statutes similarly provide for secondary liability in express terms. Take New York's employment discrimination law, which makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL]."  Exec. Law § 296(6); *see also, e.g.*, GOL § 11-101 (extending dram shop liability to those "unlawfully assisting in procuring liquor"); N.Y. Veh. & Traf. L. § 471 ("Any person who knowingly aids and abets any such violation of this section shall be liable to any person aggrieved.").

These same principles make clear that the Court cannot read conspiracy liability into a New York statute that does not provide for it.  *Cf. Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 842 (2d Cir. 1998) (applying *Central Bank*'s holding on aiding-and-abetting to conspiracy); *see also Charney v. Sullivan & Cromwell LLP*, 17 Misc. 3d 1105(A), 2007 WL 2822423 (N.Y. Comm. Div. 2007) ("I have found no authority and plaintiff has offered none suggesting that New York recognizes a conspiracy to violate a [statute]" in the absence of "any underlying tort cause of action in the complaint").

Respectfully submitted,

/s/ Sean Hecker

Sean Hecker
Jenna M. Dabbs

*Counsel for Defendants Galaxy and ParaFi*
