UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSEPH KENT,<br><br>        Plaintiff,<br><br>     -against-<br><br>POOLTOGETHER, INC.; DHARMA LABS, INC.;<br>OZONE NETWORKS, INC.; LEIGHTON CUSACK;<br>KAIN WARWICK; STANISLAV KULECHOV;<br>DRAGONFLY DIGITAL MANAGEMENT, LLC;<br>NASCENT US, LLC; NASCENT LIMITED<br>PARTNERSHIP; STICHTING MAVEN 11 FUNDS;<br>GALAXY DIGITAL TRADING HK LIMITED;<br>PARAFI CAPITAL, LP; and COMPOUND LABS,<br>INC.,<br><br>        Defendants. | Case No. 21-CV-6025-FB-CLP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT COMPOUND LABS, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, OR, IN THE <u>ALTERNATIVE, STRIKE THE CLASS ALLEGATIONS</u>**

Jason Gottlieb
Michael Mix
Alexandra W. Wang
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone:  (212) 735-8600
Facsimile:  (212) 735-8708

*Attorneys for Defendant Compound Labs, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT .......................................................................................................... 5

I.    COMPOUND LABS IS NOT THE COMPOUND PROTOCOL, AND PLAINTIFF
      DOES NOT STATE ANY CLAIM AGAINST COMPOUND LABS ............................ 6

II.   COMPOUND LABS CANNOT BE HELD LIABLE UNDER GOL § 5-423
      BECAUSE PLAINTIFF DID NOT PAY ANYTHING TO COMPOUND LABS .......... 9

      A.  Under the Plain Language of GOL § 5-423, Only the Legal Person to Whom
          Plaintiff Paid Money Can Be Liable ...................................................... 9

      B.  Plaintiff Cannot Bring a Claim for Aiding and Abetting a Violation of
          GOL § 5-423 or Conspiring to Violate GOL § 5-423 ........................... 12

III.  THE POOLTOGETHER PROTOCOL "LOTTERY" DID NOT VIOLATE
      GOL § 5-423 BECAUSE USERS DID NOT RISK ANYTHING OF VALUE ............. 17

IV.   BECAUSE PLAINTIFF DID NOT RISK ANY MONEY, HE DOES NOT HAVE
      ARTICLE III STANDING TO BRING THIS LAWSUIT ................................ 17

V.    PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK ............................... 18

CONCLUSION ...................................................................................................... 18

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **FEDERAL CASES**

*Baguidy v. Boro Transit, Inc.*,
   283 F. Supp. 3d 14 (E.D.N.Y. 2017) .......................................................................7

*Bank v. Vivint Solar, Inc.*,
   No 18-CV-2555 (MKB),
   2019 U.S. Dist. LEXIS 30638 (E.D.N.Y. Feb. 25, 2019).......................................14

*BedRoc Ltd., LLC v. United States*,
   541 U.S. 176 (2004)................................................................................................9

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)..........................................................................................13, 15

*City of New York v. Milhelm Attea & Bros.*,
   No. 06-cv-3620, 2009 U.S. Dist. LEXIS 19351 (E.D.N.Y. Mar. 11, 2009)...........14

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
   234 F. Supp. 3d 462 (S.D.N.Y. 2017).....................................................................10

*Costabile v. N.Y.C Health & Hosps. Corp.*,
   951 F.3d 77 (2d Cir. 2020).......................................................................................5

*Cruz v. TD Bank, N.A.*,
   855 F. Supp. 2d 157 (S.D.N.Y. 2012).....................................................................10

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
   879 F.3d 462 (2d Cir. 2018)....................................................................................11

*Dane v. UnitedHealthcare Ins. Co.*,
   974 F.3d 183 (2d Cir. 2020).....................................................................................5

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
   924 F. Supp. 449 (S.D.N.Y. 1996) .........................................................................14

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
   135 F.3d 837 (2d Cir. 1998)....................................................................................15

*Langan v. Johnson & Johnson Consumer Cos.*,
   897 F.3d 88 (2d Cir. 2018)......................................................................................17

*Linde v. Arab Bank, PLC*,
   384 F. Supp. 2d 571 (E.D.N.Y. 2005) ....................................................................16

*Linde v. Arab Bank, PLC*,
  944 F. Supp. 2d 215 (E.D.N.Y. 2013) ............................................................15, 16

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)..........................................................................17, 18

*Mastafa v. Chevron Corp.*,
  759 F. Supp. 2d 297 (S.D.N.Y. 2010)...............................................................14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)........................................................................................8, 9

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
  453 U.S. 1 (1981)...............................................................................................10

*United States ex rel. Minge v. Hawker Beechcraft Corp.*
  (*In re Hawker Beechcraft, Inc.*),
  515 B.R. 416 (S.D.N.Y. 2014)..........................................................................11

*Nielsen v. Preap*,
  139 S. Ct. 954 (2019).........................................................................................11

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018)...............................................................14

*Renz v. Grey Advert., Inc.*,
  135 F.3d 217 (2d Cir. 1997)..............................................................................11

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)...........................................................................13, 16

*Sollis v. Wolf*,
  No. 19 Civ 5383 (PAE),
  2020 U.S. Dist. LEXIS 166697 (S.D.N.Y. Sept. 11, 2020)................................10

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004)..........................................................................................14

*United States v. Gonzales*,
  520 U.S. 1 (1997)...............................................................................................12

*United States v. Johnson*,
  961 F.3d 181 (2d Cir. 2020)..............................................................................11

*United States v. Jones*,
  965 F.3d 190 (2d Cir. 2020)................................................................................9

*Varela v. Flintlock Const., Inc.*,
No. 01-cv-2736, 2002 U.S. Dist. LEXIS 3521 (S.D.N.Y. Mar. 5, 2002) ............................... 16

*Wilson v. Dantas*,
746 F.3d 530 (2d Cir. 2014) .......................................................................................... 5

## STATE CASES

*A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*,
87 N.Y.2d 574 (1996) ................................................................................................ 9

*Charney v. Sullivan & Cromwell LLP*,
17 Misc. 3d 1105(A) (Sup. Ct. N.Y. Cnty. 2007) ................................................... 15

*Grover v. Morris*,
73 N.Y. 473 (1878) ................................................................................................ 12

*Morales v. County of Nassau*,
94 N.Y.2d 218 (1999) ............................................................................................ 10

*Sheehy v. Big Flats Cmty. Day, Inc.*,
73 N.Y.2d 629 (1989) ............................................................................................ 10

*Solovay v. Greater N.Y. Sav. Bank*,
198 A.D.2d 27 (1st Dep't 1993) ........................................................................... 13

*Tyszka v. Make and Take Holding, LLC*,
72 A.D.3d 1620 (4th Dep't 2010) ......................................................................... 12

## FEDERAL STATUTES

Anti-Terrorism Act ......................................................................................... 14, 15, 16

## STATE STATUTES

General Obligations Law § 5-415 ................................................................................ 14

General Obligations Law § 5-423 ........................................................................ *passim*

Defendant Compound Labs, Inc. ("Compound Labs") respectfully submits this memorandum of law in support of its motion (the "Motion"), under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint, dated February 15, 2022 (ECF No. 63, the "Complaint" or the "Compl.") filed by Plaintiff Joseph Kent ("Plaintiff"), or, in the alternative, strike the Complaint's class action allegations.

## PRELIMINARY STATEMENT

Plaintiff named Compound Labs – as well as twelve other defendants – in a lawsuit that, per the express language of the statute under which it is brought, can only be asserted against the one specific entity to which Plaintiff paid money.  That entity is not Compound Labs, nor is it alleged to be.  Compound Labs is a software development company that has developed various products, including an open-source software protocol (the "Compound Protocol") that is freely available for use on the internet, and which is and can be used for many purposes.  There is literally not a single allegation in the Complaint that the entity Compound Labs had anything to do with Plaintiff, or could be liable for his claims under the statute in question.  Plaintiff thinks that the Compound Protocol software was used in some way that violates a New York law.  But that complaint has nothing whatsoever to do with Compound Labs, who is not alleged to have done anything other than create the Compound Protocol software.

Plaintiff claims to be a "gravely concerned" citizen.  He alleges that he delivered $10 worth of cryptocurrency to the PoolTogether Protocol, and received what he terms a "lottery ticket".  Soon thereafter, he took it upon himself to file this lawsuit, for violation of New York General Obligations Law ("GOL") § 5-423, naming thirteen Defendants, including Compound Labs.[1]

---

[1]     Only the first cause of action in the Complaint is asserted against Compound Labs.  The second cause of action is asserted against certain other Defendants, but not Compound Labs.

After the lawsuit commenced, Plaintiff delivered another $2 worth of cryptocurrency to the PoolTogether Protocol.

According to Plaintiff, Compound Labs designed a "protocol that allows individuals to loan their cryptocurrencies out and earn interest."  The Complaint alleges that some of the cryptocurrency delivered by users to the PoolTogether Protocol was staked onto the Compound Protocol software in order to earn interest (in an action not taken by Compound Labs, which is not alleged to have had anything whatsoever to do with this staking), and that some of that interest was collected and provided to users (again, having nothing to do with Compound Labs).

Compound Labs should be dismissed from this litigation for several reasons.  <u>First</u>, Plaintiff's aim at Compound <u>Labs</u> is awry.  Plaintiff alleges that the PoolTogether Protocol staked cryptocurrency onto the Compound <u>Protocol</u> – but Compound <u>Labs</u> is not the same thing as the Compound <u>Protocol</u>.  Compound Labs designed and launched the open-source Compound Protocol, but the Compound Protocol is not owned, operated, or administered by Compound Labs.  The Compound Protocol is just software on the internet.  Anyone can use it.  When the PoolTogether Protocol stakes cryptocurrency through "Compound," as alleged in the Complaint, Plaintiff is making allegations about the Compound <u>Protocol</u> (the software), not Compound <u>Labs</u> (the company).  There is no allegation that Compound <u>Labs</u> had anything whatsoever to do with Plaintiff.

<u>Second</u>, Compound Labs cannot be liable under the plain language of GOL § 5-423 because Plaintiff paid no money to Compound Labs, as the statute requires.  The statute provides that "[a]ny person who shall have paid any money, or valuable thing, for a chance or interest in any lottery or distribution, prohibited by the penal law, may sue for and recover the same of the person to whom such payment or delivery was made." (emphasis added).  The statute

unambiguously contemplates that a potential plaintiff can sue the legal person to whom payment or delivery was made.  No other party is implicated by the statute.  The Complaint does not allege that Plaintiff paid anything to Compound Labs.  Compound Labs therefore is not a proper defendant under the statute.  And while the Complaint ventures that certain Defendants can be held liable for "aiding and abetting" and/or "conspiracy" – without explicitly pleading those claims – Plaintiff cannot bring such claims under GOL § 5-423, which does not provide for secondary liability.

Third, even if Compound Labs were a proper defendant in this GOL § 5-423 action, the Complaint still should be dismissed because the "lottery" allegedly operated by the PoolTogether Protocol is not a "lottery" as contemplated by the statute, as users can withdraw their money at any time, and thus do not risk anything.

Fourth, because Plaintiff has not lost anything, as explained above – nor could he, because he can withdraw his cryptocurrency at any time – Plaintiff has not suffered any injury in fact, and thus does not even have Article III standing to bring this claim.

Finally, in the event that the Complaint is not dismissed, Plaintiff's class allegations should be struck, as Plaintiff has a litany of conflicts with the proposed class that he purportedly represents, and because he cannot allege a nationwide class for claims arising under GOL § 5-423.[2]

## STATEMENT OF FACTS

The Complaint describes the PoolTogether Protocol as a "no-loss lottery" or a "prize-linked savings account" where "users deposit money with a counterparty and forgo the interest

---

[2]       This argument and the preceding two arguments are discussed only briefly in this memorandum of law because, in order to reduce duplication for the Court, Compound Labs incorporates by reference the portions of Defendant PoolTogether Inc.'s brief (the "PoolTogether Brief") regarding these subjects, at Pages 10-25.

otherwise due on that money in exchange for a lottery ticket paying a prize valued at (roughly) the total amount of interest due to all depositers over the drawing period." (Compl. ¶ 22).

Users allegedly "send cryptocurrencies to PoolTogether's platforms," and "[e]ach dollar worth of value delivered to PoolTogether entitles the gambler to one 'ticket' for a lottery that is drawn by a random-number generator either daily or weekly." (Compl. ¶¶ 29-30). The PoolTogether Protocol in turn lends out the funds it receives from users "to a 'liquidity pool' of cryptocurrencies from which unrelated people and entities can borrow or exchange cryptocurrencies." (Compl. ¶ 31). One of those alleged "liquidity pools" is the Compound Protocol, but Plaintiff alleges that the PoolTogether Protocol lends funds to other liquidity pools as well. (Compl. ¶ 31). Users "forgo the 'yield'—or interest—that would otherwise be due from the liquidity pools." (Compl. ¶ 32). The PoolTogether Protocol "pools all the interest and divides it among a pre-specified number of winning tickets, keeping up to 50% of the yield that would otherwise be due as prizes as a 'reserve' to generate more yield, supposedly for future prizes." (Compl. ¶ 32).

According to the Complaint, Compound Labs is "one of the most visible pioneers of decentralized finance." (Compl. ¶ 146). Compound Labs "designed a protocol that allows individuals to loan their cryptocurrencies out and earn interest" (the "Compound Protocol"). (Compl. ¶ 146). The PoolTogether Protocol "pays a portion of that interest back to users in the form of lottery prizes" and "Compound takes a portion of the interest PoolTogether earns as a fee." (Compl. ¶ 147). (Note that this allegation that "Compound" takes a portion of the interest as a fee does not refer to Compound Labs, but rather the software, the Compound Protocol.)

The Complaint alleges that Compound Labs "buil[t] tools with which Pooltogether may operate an illegal lottery." (Compl. ¶ 149). Namely, the Complaint alleges, Compound Labs

"designed a PoolTogether smart contract (a form of computer program facilitating the distribution of cryptocurrencies)."  (Compl. ¶ 148).  In short, Compound Labs is alleged to have written software – nothing more.

On October 21, 2021, Plaintiff allegedly paid $10 worth of Gemini Dollars ("GUSD") to app.pooltogether.com.  (Compl. ¶ 91).  Plaintiff received ten tickets in the PoolTogether Protocol's GUSD lottery.  (Compl. ¶ 91).  On January 17, 2022, Plaintiff allegedly paid $2 worth of U.S. Dollar Coins ("USDC") to Defendant Dharma Labs, Inc.  (Compl. ¶¶ 96-100).   The Complaint is silent as to whether Plaintiff won any of the lotteries in which he entered, or whether or not Plaintiff withdrew his GUSD or USDC that he had delivered to the PoolTogether Protocol.

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, the complaint must include enough facts to state a claim to relief that is plausible on its face." *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (citation and internal quotation marks omitted).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  "Although all allegations contained in the complaint are assumed to be true, this tenet is inapplicable to legal conclusions." *Id.* (citation and internal quotation marks omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (citation omitted).  Although the court is "obligated to draw the most favorable inferences that plaintiff's complaint supports, [the court] cannot invent factual allegations that he has not pled." *Costabile v. N.Y.C Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (citation omitted).

I.    **COMPOUND LABS IS NOT THE COMPOUND PROTOCOL, AND PLAINTIFF
      DOES NOT STATE ANY CLAIM AGAINST COMPOUND LABS**

Plaintiff has not pleaded any interactions with Compound Labs.  Not one.

Compound Labs is the only named "Compound" Defendant.  But Compound Labs (which is a company) is not the same thing as the Compound Protocol, which is no more than software on the internet that is freely available for anyone to use.  By Plaintiff's own allegations, the PoolTogether Protocol staked some – but not all – of the assets received in its lotteries to the Compound Protocol (Compl. ¶ 31).  But neither Plaintiff nor the PoolTogether Protocol had any interaction with Compound Labs.

The Complaint makes clear that Compound Labs and the Compound Protocol are two very different things.  Plaintiff concedes that Compound Labs "designed a protocol that allows individuals to loan their cryptocurrencies out and earn interest."  (Compl. ¶ 146 (emphasis added)).  Plaintiff alleges that Compound Labs was "building tools."  (Compl. ¶ 149).  And Plaintiff alleges that Defendant Leighton Cusack publicly stated that the PoolTogether Protocol built on top of "Compound."  (Compl. ¶ 148).

Tellingly, when Plaintiff alleges that the PoolTogether Protocol "loans its gamblers' cryptocurrencies out through Compound and earns interest" (Compl. ¶ 147), Plaintiff deliberately uses the word "Compound," and not "Compound Labs,"[3] despite using Compound Labs elsewhere in the Complaint.  The use of the word "Compound" in ¶ 147, without "Labs," makes clear that Plaintiff is alleging that the PoolTogether Protocol loans cryptocurrencies using the Compound Protocol.  Thus, based on Plaintiff's own admissions, Compound Labs was merely "building tools" (Compl. ¶ 149) that the PoolTogether Protocol eventually utilized.

---

[3]     Neither term is defined in the Complaint.

Plaintiff does not allege that Compound Labs has any direct relationship with the PoolTogether Protocol, let alone with Plaintiff.  Plaintiff does not allege that Compound Labs had anything to do with Plaintiff at all, such that it should be held liable as a primary actor under GOL § 5-423.  Instead, according to the Complaint, Compound Labs created the Compound Protocol – software that is freely available on the internet for anyone to use – which the PoolTogether Protocol in turn allegedly used to stake the cryptocurrencies received in its lotteries.  Plaintiff cannot hold Compound Labs liable under GOL § 5-423 for anyone else's actions on the decentralized, autonomous software that is the Compound Protocol.

Plaintiff further complains that "Compound Labs touts PoolTogether on its website as 'a no-loss *lottery* utilizing the interest earned in Compound as the prize' . . . making clear that it intends the purpose of its involvement to be facilitating a lottery." (Compl. ¶ 149).  But that quote says nothing about Compound's "purpose" or its "involvement" or any effort to "facilitat[e]" a lottery.  To the contrary, the portion of the website quoted in the Complaint is in a list of "[c]ommunity-built interfaces integrating the protocol" (emphasis added).[4]  Compound Labs, https://compound.finance/ (2021) (listing 27 companies who use the Compound Protocol for various applications).  The website thus literally says that the PoolTogether Protocol was built by the "community" (and not Compound Labs), and that the PoolTogether Protocol (along with many other entities) is using the Compound <u>Protocol</u>, but the website does not state that Compound <u>Labs</u> itself has any involvement in the PoolTogether Protocol.

In the Pre-Motion Letter, Plaintiff offers an absurd slippery slope argument: that if Compound Labs is dismissed in this lawsuit, some future creator of protocols for "peer-to-peer

---

[4]     On a motion to dismiss, the court may consider "documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit."  *Baguidy v. Boro Transit, Inc.*, 283 F. Supp. 3d 14, 22 (E.D.N.Y. 2017).  The Complaint references the Compound Labs website (Compl. ¶ 149), and therefore the Court is permitted to consider it on a motion to dismiss.

sharing of child pornography," the "creation of computer viruses," or "3D-printed firearms" could escape liability in some future hypothetical action. Plaintiff's analogy fails. The Compound Protocol is not alleged to run lotteries; and Compound Labs is not alleged to be involved in them. Instead, as conceded by Plaintiff, the Compound Protocol "allows individuals to loan their cryptocurrencies out and earn interest" (Compl. ¶ 146), which Plaintiff does not allege is unlawful.

Plaintiff is alleging that if open-source software that can be used for countless <u>legal</u> applications is used by anyone for an allegedly <u>illegal</u> application, the software creators can be held responsible for that illegal use. That would be nonsense. Under that view, Tim Berners-Lee (widely credited for inventing the software protocol that became the Internet) could be held liable for anything unlawful disseminated on the Internet. Google could be held responsible for anyone who used its search functions, or its Google Maps application, to find the address of a building that was used as an illegal gambling hall. Under Plaintiff's view of the world, Johannes Gutenberg (were he still alive) could be held liable for anything defamatory published on a printing press.

The Compound Protocol is simply a tool, one which can be used for countless legal purposes. It would be just as absurd to hold its creators responsible for allegedly illegal behavior using that tool as it would be to hold Ford Motor Company responsible if a bank robber used a Ford car in his getaway, or to hold Sears responsible if one person hit another with a Sears Craftsman hammer. The Plaintiff, a self-appointed "concerned citizen," may not like how some people use the tools Compound Labs created. But that does not create a cause of action against the creators.

Plaintiff misses the mark by comparing the Compound Protocol to the peer-to-peer software at issue in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). In *Grokster*, the Supreme Court held that "one who distributes a device with the object of promoting

its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 936-37.  That case is a world away.  In *Grokster*, the Supreme Court found that summary judgment should not have been granted in favor of the defendant software distributors, because they took active steps to encourage copyright infringement, such as advertising that they were replacements for similarly infringing software Napster, and distributing articles promoting the software's ability to access copyrighted music.  *Id.* at 937-40.  There are no such allegations here against Compound Labs.  And unlike *Grokster*, where the software's <u>principal</u> use was for copyright infringement, which those defendants actively enabled and encouraged, the Complaint does not allege that Compound Labs created the Compound Protocol for the purpose of conducting lotteries.

## II.  COMPOUND LABS CANNOT BE HELD LIABLE UNDER GOL § 5-423 <u>BECAUSE PLAINTIFF DID NOT PAY ANYTHING TO COMPOUND LABS</u>

Plaintiff has asserted only one claim for relief against Compound Labs, under GOL § 5-423.  (Compl. ¶¶ 176-82).  GOL § 5-423, which allows a plaintiff to recover monies paid for lottery tickets, only permits such plaintiff to recover against the person or entity to which the plaintiff paid money.  Because Plaintiff did not pay any money to Compound Labs, as is required by the statute, Compound Labs must be dismissed.

### A.  Under the Plain Language of GOL § 5-423, Only the Legal Person to Whom <u>Plaintiff Paid Money Can Be Liable</u>

The court's "objective in construing a statute is to give effect to the legislative intent.  Where the language of a statute is clear, it is presumed that that intent is reflected in the words chosen by the Legislature and the plain meaning they express" *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 87 N.Y.2d 574, 580 (1996).  Thus, the "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020).  *See also BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183

9

(2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there.  Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (internal citation and quotation marks omitted).  A "defense that turns on a clear question of statutory interpretation is properly adjudicated in the context of a motion to dismiss." *Sollis v. Wolf*, No. 19 Civ. 5383 (PAE), 2020 U.S. Dist. LEXIS 166697, at *5 (S.D.N.Y. Sept. 11, 2020) (citation and quotation marks omitted).

Additionally, both New York and federal courts find that "[w]here the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage." *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 636 (1989); *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 172-73 (S.D.N.Y. 2012) (same); *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 474-75 (S.D.N.Y. 2017) (same).  *See also Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.  In the absence of strong indicia of a contrary legislative intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.") (internal citation and quotation marks omitted).  And "[w]here the Legislature has spoken, indicating its policy preferences, it is not for courts to superimpose their own." *Morales v. County of Nassau*, 94 N.Y.2d 218, 224 (1999).

GOL § 5-423 is unambiguous.  It states:

> Any person who shall purchase any share, interest, ticket, certificate of any share or interest, or part of a ticket, or any paper or instrument purporting to be a ticket or share or interest in any ticket, or purporting to be a certificate of any share or interest in any ticket, or

10

> in any portion of any lottery, may sue for and recover double the sum of money, and double the value of goods or things in action, which he may have paid or delivered in consideration of such purchase, with double costs of suit.
>
> Any person who shall have paid any money, or valuable thing, for a chance or interest in any lottery or distribution, prohibited by the penal law, <u>may sue for and recover the same of the person to whom such payment or delivery was made</u>.

(emphasis added).

The first paragraph of the statute provides that a purchaser of a lottery ticket has the ability to bring an action, and the second paragraph lists whom that purchaser can sue: "the person to whom such payment or delivery was made."[5]  The use of the singular word "the" before "person" illustrates that the statute applies to the singular legal person to whom the user paid money.  *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("Here grammar and usage establish that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context.") (citation and quotation marks omitted); *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018) ("The use of the definite article 'the' indicates a singular court, whereas the indefinite article 'any' or 'a' denotes multiple courts."); *Renz v. Grey Advert., Inc.*, 135 F.3d 217, 222 (2d Cir. 1997) ("Placing the article 'the' in front of a word connotes the singularity of the word modified."); *United States ex rel. Minge v. Hawker Beechcraft Corp.* (*In re Hawker Beechcraft, Inc.*), 515 B.R. 416, 428 (S.D.N.Y. 2014) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'") (citation

---

[5]     Plaintiff argues in his Pre-Motion Letter that the second paragraph of § 5-423 is irrelevant because Plaintiff only "invoke[s]" the first paragraph," which "provides broader rights."  (ECF No. 49 at 11-12).  Under Plaintiff's blinkered reading, any plaintiff would be able to circumvent the limitation contained in the second paragraph § 5-423 by merely "invoking" the first.  Plaintiff's novel theory would violate the canon that courts should "try to avoid statutory interpretations that render provisions superfluous," *United States v. Johnson*, 961 F.3d 181, 188 (2d Cir. 2020) (citation and internal quotation marks omitted), and would lead to any plaintiff only "invoking" the portion of a statute that benefits it.

omitted).  *Cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind.") (citation omitted).

Consistent with this interpretation, the New York Court of Appeals has explained – with respect to the prior version of the statute – that the "section prohibits the sale of lottery tickets, and makes such sale a misdemeanor, and the thirty-second section, which authorizes an action by the purchaser to recover double the sum paid, by necessary implication designates the seller as the person against whom the action is to be brought.  The defendants were, according to common understanding and in a legal sense, sellers of the tickets."  *Grover v. Morris*, 73 N.Y. 473, 477 (1878) (emphasis added).

Accordingly, based on the statute's plain language, the only party Plaintiff may sue – if Plaintiff has a claim at all – is the entity to which Plaintiff allegedly made payment.  Plaintiff does not allege (nor could he) that he paid anything to Compound Labs.  Plaintiff should not be permitted to seek a broader remedy than permitted by the statute, and should not be permitted to seek remedies against multiple defendants when the statute contemplates an action against a singular defendant.  Accordingly, Compound Labs should be dismissed.

### B.   Plaintiff Cannot Bring a Claim for Aiding and Abetting a Violation of GOL § 5-423 or Conspiring to Violate GOL § 5-423

Although Plaintiff does not expressly plead an aiding and abetting claim, Plaintiff alleges that Compound Labs aided and abetted PoolTogether.  (Compl. ¶¶ 1, 20, 158).  To the extent that the Complaint could be read to assert an aiding and abetting claim, such claim would fail because GOL § 5-423 does not provide for secondary liability.

New York courts have repeatedly held that a statute that provides for liability against only certain defendants does not support a claim for aiding and abetting against other defendants unless explicitly stated in the statute.  *See Tyszka v. Make and Take Holding, LLC*, 72 A.D.3d 1620 (4th

Dep't 2010) (finding that law firm was not liable under General Business Law § 691 when that statute only provided that an employee could be liable for aiding a statutory violation); *Solovay v. Greater N.Y. Sav. Bank*, 198 A.D.2d 27 (1st Dep't 1993) (finding that a bank's counsel could not be liable for aiding and abetting a bank's violation of [GOL] § 5-1504 because the only wrongful act was committed by the bank, not the counsel).

Similarly, the United States Supreme Court has held that a plaintiff cannot assert a cause of action for aiding and abetting where the statute in question does not provide for such a cause of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (interpreting this question in the context of § 10(b) of the Securities Exchange Act of 1934). The Supreme Court explained that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Id.* at 182. It "is not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to impose § 10(b) aiding and abetting liability." *Id.* at 185. The Supreme Court added:

> [T]he rules for determining aiding and abetting liability are unclear, in an area that demands certainty and predictability. That leads to the undesirable result of decisions made on an ad hoc basis, offering little predictable value to those who provide services to participants in the securities business. Such a shifting and highly fact-oriented disposition of the issue of who may be liable for a damages claim for violation of Rule 10b-5 is not a satisfactory basis for a rule of liability imposed on the conduct of business transactions. Because of the uncertainty of the governing rules, entities subject to secondary liability as aiders and abettors may find it prudent and necessary, as a business judgment, to abandon substantial defenses and to pay settlements in order to avoid the expense and risk of going to trial.

*Id.* at 188-89 (internal citations and quotation marks omitted).

Federal courts in this circuit have applied the Supreme Court's reasoning in *Central Bank* to numerous other statutes that do not expressly provide for aiding and abetting. *See Rothstein v.*

*UBS AG*, 708 F.3d 82 (2d Cir. 2013) (no aiding and abetting liability under the Anti-Terrorism Act); *Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297 (S.D.N.Y. 2010) (no aiding and abetting liability under the Torture Victims Protection Act); *Bank v. Vivint Solar, Inc.*, No 18-CV-2555 (MKB), 2019 U.S. Dist. LEXIS 30638, at *13-14 (E.D.N.Y. Feb. 25, 2019) (expressing doubt that a defendant can be liable under the TCPA for aiding and abetting a statutory violation), *report and recommendation adopted by* 2019 U.S. Dist. LEXIS 48033 (Mar. 22, 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018) (no aiding and abetting liability for human trafficking statute); *City of New York v. Milhelm Attea & Bros.*, No. 06-cv-3620, 2009 U.S. Dist. LEXIS 19351, at *7-19 (E.D.N.Y. Mar. 11, 2009) (no aiding and abetting liability under the Contraband Cigarette Trafficking Act and explaining that "[w]here a statute is specific as to who may be liable, courts have found that the express statutory language controls the scope of liability"); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 468 (S.D.N.Y. 1996) ("[T]here can be no claim based on aiding and abetting a RICO violation in view of [Central Bank]").

GOL § 5-423, by its terms, does not provide for aiding and abetting liability.  By contrast, the New York State Legislature certainly knew <u>how</u> to provide for secondary liability in another provision of the GOL relating to lotteries.  *See* GOL § 5-415 ("Every grant, bargain, sale, conveyance, or transfer of any real estate, or of any goods, chattels, things in action, or any personal property, which shall hereafter be made in pursuance of any lottery, or for the purpose of aiding and assisting in such lottery, game or other device, to be determined by lot or chance is hereby declared void and of no effect.").  Providing for secondary liability in one GOL section, but not in § 5-423, indicates that the Legislature did not intend for § 5-423 to encompass secondary liability. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different

meanings were intended.") (citation omitted); *Cent. Bank of Denver*, 511 U.S. at 176-77 ("Congress knew how to impose aiding and abetting liability when it chose to do so.  If, as respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.  But it did not.") (internal citations omitted).

Accordingly, Plaintiff cannot sustain a claim for aiding and abetting a violation of § 5-423.

Likewise, to the extent the Complaint could be read to state a claim for conspiracy to commit a violation of § 5-423 (which it certainly does not state explicitly), such claim would similarly fail because the statute does not provide for liability for conspiracy to commit a violation of § 5-423.  *See Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 842 (2d Cir. 1998) ("[T]he reasoning leading to the Supreme Court's rejection of aiding and abetting liability under § 10(b) and Rule 10b-5 also applies to conspiracy.  Critically, [as] in the case of aiding and abetting, there is no mention of conspiracy in the text of § 10(b).  Just as Congress clearly knew how to impose aiding and abetting liability when it chose to do so, thereby suggesting that its absence from § 10(b) should not be disregarded, the existence of statutes expressly providing for conspiracy liability warrants the same conclusion here.") (internal citations omitted); *Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 215, 216-17 (E.D.N.Y. 2013) ("*Linde II*") (applying reasoning of *Central Bank of Denver*, *Rothstein*, and *Dinsmore* and holding that there is no cause of action for conspiracy to commit a violation of the Anti-Terrorism Act); *Charney v. Sullivan & Cromwell LLP*, 17 Misc. 3d 1105(A), 1105(A) (Sup. Ct. N.Y. Cnty. 2007) ("I have found no authority and plaintiff has offered none suggesting that New York recognizes a conspiracy to violate a civil rights enactment ([New York City Human Rights Law]).  On the contrary, New

York courts permit allegations of conspiracy only to connect the actions of separate defendants with an otherwise actionable tort.") (citation and internal quotation marks omitted).[6]

Plaintiff argues in his pre-motion letter that because New York permits secondary liability for <u>criminal</u> violations involving lotteries, secondary liability also should be available for private plaintiffs seeking civil liability under GOL §5-423.  (ECF No. 49 at 12).  Plaintiff asserts that "[b]ecause it would be odd if somehow defendants were subject to criminal exposure but not civil exposure, courts often attempt to harmonize civil and criminal conspiracy liability."  (*Id.*).  But the one case Plaintiff cites for that proposition, *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 583 (E.D.N.Y. 2005) ("*Linde I*"), was effectively overruled by the Second Circuit in *Rothstein*.  The Second Circuit's holding in *Rothstein* directly forecloses Plaintiff's argument; the Second Circuit found that the fact that the Anti-Terrorism Act provides for secondary liability for criminal violations but not civil violations means that Congress did <u>not</u> intend to permit secondary liability for civil liability.  *See Rothstein*, 708 F.3d at 98 ("We doubt that Congress, having included in the ATA several express provisions with respect to aiding and abetting in connection with the criminal provisions, can have intended § 2333 to authorize civil liability for aiding and abetting through its silence.").  Indeed, a later decision in the very same *Linde* matter cited by Plaintiff, the District Court, in light of *Rothstein*, ultimately dismissed the plaintiff's civil conspiracy claims.  *Linde II*, 944 F. Supp. 2d at 217 ("[U]nder Rothstein, silence regarding civil conspiracy liability in § 2333(a) speaks louder than criminal conspiracy liability set forth in other provisions of the ATA.").  Accordingly, the fact that the legislature decided to generally provide for secondary criminal

---

[6]       *Varela v. Flintlock Const., Inc.*, No. 01-cv-2736, 2002 U.S. Dist. LEXIS 3521 (S.D.N.Y. Mar. 5, 2002), relied upon by Plaintiff in his Pre-Motion Letter (ECF No. 49 at 11), is inapposite.  *Varela* involved the "statutory" tort of wrongful discharge under the New York State Human Rights Law.  The court concluded that because one could bring a claim for conspiracy to commit the common-law tort of wrongful discharge, the court declined to dismiss a civil conspiracy claim linked to the same statutory tort.  There is no similar "tort having a statutory basis" in this case.

liability in Article 105 of the Penal Code, but not for civil liability, is evidence that secondary liability is <u>not</u> available for violations of § 5-423.

## III.   THE POOLTOGETHER PROTOCOL "LOTTERY" DID NOT VIOLATE GOL § 5-423 BECAUSE USERS DID NOT RISK ANYTHING OF VALUE

Even if Compound Labs were a proper defendant in this litigation, the Complaint against it should still be dismissed – as well as against the other Defendants – because the PoolTogether Protocol's so-called "lottery" is not covered under GOL § 5-423.  Compound Labs incorporates by reference the portion of the PoolTogether Inc. Brief explaining why the "lottery" alleged by Plaintiff is not within the ambit of the statute.

## IV.   BECAUSE PLAINTIFF DID NOT RISK ANY MONEY, HE DOES NOT HAVE ARTICLE III STANDING TO BRING THIS LAWSUIT

Because Plaintiff did not actually risk any money when he entered the PoolTogether Protocol lotteries, he has not suffered any injury, and thus does not have Article III standing to sue.  Compound Labs incorporates by reference the portion of the PoolTogether Inc. Brief explaining why Plaintiff lacks Article III standing and why Plaintiff cannot manufacture standing by inflicting harm on himself.

Plaintiff's lack of standing is even more pronounced with respect to Compound Labs, with which Plaintiff has no relationship and from which Plaintiff has not suffered any injury.  *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) ("Mahon, however, fails to explain why a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties."); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 94 (2d Cir. 2018) ("with respect to each asserted claim" against each defendant, "a plaintiff must always have suffered a distinct and palpable injury to herself") (internal citations and quotations omitted).

As Plaintiff does not have standing to bring his claims, the Complaint must be dismissed for lack of subject matter jurisdiction.[7]

## V.  **PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK**

Plaintiff's class allegations should be struck because he is not an adequate representative due to his conflicts of interest with the class members, and his putative class cannot be sustained because GOL § 5-423 has no reach outside New York State.  Compound Labs incorporates by reference the portion of the PoolTogether Inc. Brief explaining why the class allegations should be struck.

## CONCLUSION

For the foregoing reasons, Compound Labs respectfully requests that the Court dismiss the Complaint in its entirety as against Compound Labs, or, alternatively, strike the class allegations, and grant such other and further relief as is just and proper.

Dated: New York, New York
      April 19, 2022               MORRISON COHEN LLP

                                 By:  _/s/ Jason Gottlieb_____
                                      Jason Gottlieb
                                      Michael Mix
                                      Alexandra W. Wang
                                      909 Third Avenue
                                      New York, New York 10022
                                      (212) 735-8600

                                  *Attorneys for Defendant Compound Labs, Inc.*

---

[7]     *See Mahon*, 683 F.3d at 62 ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.") (citation and quotation marks omitted).