UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH KENT,<br><br>        Plaintiff,<br><br>        -against-<br><br>POOLTOGETHER, INC.; DHARMA LABS, INC.;<br>OZONE NETWORKS, INC.; LEIGHTON CUSACK;<br>KAIN WARWICK; STANISLAV KULECHOV;<br>DRAGONFLY DIGITAL MANAGEMENT, LLC;<br>NASCENT US, LLC; NASCENT LIMITED<br>PARTNERSHIP; STICHTING MAVEN 11 FUNDS;<br>GALAXY DIGITAL TRADING HK LIMITED;<br>PARAFI CAPITAL, LP; and COMPOUND LABS,<br>INC.,<br><br>        Defendants. | Case No. 21-CV-6025-FB-CLP |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DRAGONFLY DIGITAL MANAGEMENT, LLC'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, OR, IN THE
<u>ALTERNATIVE, STRIKE THE CLASS ALLEGATIONS</u>**

Jason Gottlieb
Michael Mix
Alexandra W. Wang
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708

*Attorneys for Defendant Dragonfly Digital
Management, LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ............................................................................................ 3

ARGUMENT ................................................................................................................ 5

I.  DRAGONFLY CANNOT BE HELD LIABLE UNDER GOL § 5-423 BECAUSE PLAINTIFF DID NOT PAY ANYTHING TO DRAGONFLY ......................................... 6

    A.  Under the Plain Language of GOL § 5-423, Only the Legal Person to Whom Plaintiff Paid Money Can Be Liable ...................................................................... 6

    B.  Plaintiff Cannot Bring a Claim for Aiding and Abetting a Violation of GOL § 5-423 or Conspiring to Violate GOL § 5-423 ........................................... 9

    C.  Plaintiff Has Not Sufficiently Pleaded that Certain Defendants Are Operating as a General Partnership ...................................................................... 13

II.  THE POOLTOGETHER PROTOCOL "LOTTERY" DID NOT VIOLATE GOL § 5-423 BECAUSE USERS DID NOT RISK ANYTHING OF VALUE ............... 18

III.  BECAUSE PLAINTIFF DOES NOT RISK ANY MONEY, HE DOES NOT HAVE ARTICLE III STANDING TO BRING THIS LAWSUIT .............................................. 19

IV.  PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK ................................ 20

CONCLUSION ............................................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## **FEDERAL CASES**

*Bank v. Vivint Solar, Inc.*,
  No 18-CV-2555 (MKB),
  2019 U.S. Dist. LEXIS 30638 (E.D.N.Y. Feb. 25, 2019)........................................................10

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004)....................................................................................................................6

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)..........................................................................................................9, 10, 11

*City of New York v. Milhelm Attea & Bros.*,
  No. 06-cv-3620, 2009 U.S. Dist. LEXIS 19351 (E.D.N.Y. Mar. 11, 2009)...........................10

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
  234 F. Supp. 3d 462 (S.D.N.Y. 2017).........................................................................................7

*Costabile v. N.Y.C Health & Hosps. Corp.*,
  951 F.3d 77 (2d Cir. 2020)..........................................................................................................6

*Cruz v. TD Bank, N.A.*,
  855 F. Supp. 2d 157 (S.D.N.Y. 2012).........................................................................................7

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
  879 F.3d 462 (2d Cir. 2018)........................................................................................................8

*Dane v. UnitedHealthcare Ins. Co.*,
  974 F.3d 183 (2d Cir. 2020)........................................................................................................5

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
  924 F. Supp. 449 (S.D.N.Y. 1996) ...........................................................................................11

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
  135 F.3d 837 (2d Cir. 1998).......................................................................................................12

*Ely v. Perthuis*,
  12 Civ. 1078 (DAB), 2013 U.S. Dist. LEXIS 14952 (S.D.N.Y. Jan. 29, 2013).....................15

*Kitz Cloz, Inc. v. Officially for Kids, Inc.*,
  320 F. Supp. 2d 164 (S.D.N.Y. 2004)........................................................................................15

*Langan v. Johnson & Johnson Consumer Cos.*,
  897 F.3d 88 (2d Cir. 2018).........................................................................................................19

*Linde v. Arab Bank, PLC*,
   384 F. Supp. 2d 571 (E.D.N.Y. 2005) ...................................................................13

*Linde v. Arab Bank, PLC*,
   944 F. Supp. 2d 215 (E.D.N.Y. 2013) ............................................................12, 13

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012)....................................................................................19

*Mastafa v. Chevron Corp.*,
   759 F. Supp. 2d 297 (S.D.N.Y. 2010)...................................................................10

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
   453 U.S. 1 (1981) ...................................................................................................7

*United States ex rel. Minge v. Hawker Beechcraft Corp.*
   *(In re Hawker Beechcraft, Inc.)*,
   515 B.R. 416 (S.D.N.Y. 2014)................................................................................8

*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) ..............................................................................................8

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)...................................................................10

*Renz v. Grey Advert., Inc.*,
   135 F.3d 217 (2d Cir. 1997)....................................................................................8

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)..............................................................................10, 13

*Sollis v. Wolf*,
   No. 19 Civ. 5383 (PAE),
   2020 U.S. Dist. LEXIS 166697 (S.D.N.Y. Sept. 11, 2020).....................................6

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004)...............................................................................................11

*United States v. Gonzales*,
   520 U.S. 1 (1997)....................................................................................................8

*United States v. Johnson*,
   961 F.3d 181 (2d Cir. 2020)....................................................................................8

*United States v. Jones*,
   965 F.3d 190 (2d Cir. 2020)....................................................................................6

*Varela v. Flintlock Const., Inc.*,
    No. 01-cv-2736, 2002 U.S. Dist. LEXIS 3521 (S.D.N.Y. Mar. 5, 2002) ................................12

*Wilson v. Dantas*,
    746 F.3d 530 (2d Cir. 2014) ........................................................................................5

## STATE CASES

*A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*,
    87 N.Y.2d 574 (1996) ..................................................................................................6

*Charney v. Sullivan & Cromwell LLP*,
    17 Misc. 3d 1105(A) (Sup. Ct. N.Y. Cnty. 2007) ................................................12

*Grover v. Morris*,
    73 N.Y. 473 (1878) ....................................................................................................9

*Morales v. County of Nassau*,
    94 N.Y.2d 218 (1999) ................................................................................................7

*Sheehy v. Big Flats Cmty. Day, Inc.*,
    73 N.Y.2d 629 (1989) ................................................................................................7

*Slabakis v. Schik*,
    164 A.D.3d 454 (1st Dep't 2018) ..........................................................................15

*Solovay v. Greater N.Y. Sav. Bank*,
    198 A.D.2d 27 (1st Dep't 1993) ..............................................................................9

*Tutor Perini Bldg. Corp. v. Port. Auth.*,
    191 A.D.3d 569 (1st Dep't 2021) ..........................................................................15

*Tyszka v. Make and Take Holding, LLC*,
    72 A.D.3d 1620 (4th Dep't 2010) ............................................................................9

## FEDERAL STATUTES

Anti-Terrorism Act ........................................................................................10, 12, 13

## STATE STATUTES

General Obligations Law § 5-415 ..............................................................................11

General Obligations Law § 5-423 ....................................................................... *passim*

## OTHER AUTHORITIES

Revised Uniform Partnership Act § 202(a) ..............................................................14

Defendant Dragonfly Digital Management, LLC ("Dragonfly") respectfully submits this memorandum of law in support of its motion (the "Motion"), under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint, dated February 15, 2022 (ECF No. 63, the "Complaint" or the "Compl.") filed by Plaintiff Joseph Kent ("Plaintiff"), or, in the alternative, strike the Complaint's class action allegations.

## PRELIMINARY STATEMENT

Plaintiff has named Dragonfly – as well as twelve other defendants – in a lawsuit that, per the express language of the statute under which it is brought, can only be asserted against the one specific entity to which Plaintiff paid money.  That entity is not Dragonfly, nor is it alleged to be. Dragonfly, a mere investor in PoolTogether, is simply outside the scope of the statute, and no claim based on that statute can survive against Dragonfly.

Plaintiff claims to be a "gravely concerned" citizen.  He alleges that he delivered $10 worth of cryptocurrency to the PoolTogether Protocol, and received what he terms a "lottery ticket." Soon thereafter, he filed this lawsuit for violation of New York General Obligations Law ("GOL") § 5-423.  After the lawsuit commenced, Plaintiff delivered another $2 worth of cryptocurrency to the PoolTogether Protocol.  According to Plaintiff, Dragonfly invested U.S. Dollar Coins (or "USDC," a particular digital asset) in PoolTogether, and in return was issued POOL tokens (a different digital asset) permitting Dragonfly to vote on governance issues.

Dragonfly should be dismissed from this litigation for several reasons.  First, Dragonfly cannot be liable under the plain language of GOL § 5-423 because Plaintiff paid no money to Dragonfly, as the statute requires.  The statute provides that "[a]ny person who shall have paid any money, or valuable thing, for a chance or interest in any lottery or distribution, prohibited by the penal law, may sue for and recover the same of the person <u>to whom such payment or delivery was</u>

made" (emphasis added).  The statute unambiguously contemplates that a potential plaintiff can sue the legal person to whom payment or delivery was made.  No other party is implicated by the statute.  The Complaint does not allege that Plaintiff paid anything to Dragonfly.  Dragonfly therefore is not a proper defendant under the statute.  And while the Complaint ventures that certain Defendants can be held liable for "aiding and abetting" and/or "conspiracy" – without explicitly pleading those claims – Plaintiff cannot bring such claims under GOL § 5-423, which does not provide for secondary liability.

Second, after Defendants filed their pre-motion letters outlining this statutory restriction, Plaintiff apparently realized that he had overreached in naming Dragonfly and numerous other Defendants under a statute that only contemplates an action against the singular entity to which he paid money.  So Plaintiff added a new theory: that certain Defendants that hold POOL tokens, including Dragonfly, can be jointly and severally liable under GOL § 5-423 because those Defendants are in a general partnership with each other.

Plaintiff's argument, that tokenholders with governance rights in a "decentralized autonomous organization" (a "DAO") are all general partners in some general partnership, is literally unprecedented in the law.  And for good reason:  it makes no sense.  Such a finding would make anyone who held any POOL token for any length of time – including certain members of the putative class – a general partner in a partnership, all equally on the hook, jointly and severally, for any and all wrongs committed by the partnership.

The PoolTogether DAO bears no resemblance to any for-profit general partnership, and Plaintiff has not come close to pleading the elements of a partnership, including that tokenholders have split any profits generated by the PoolTogether Protocol.  The thousands of holders of POOL

tokens are distributed around the world, and not organized in any sense of the word, much less in a plausibly-alleged partnership.

Third, even if Dragonfly could be a proper defendant in a GOL § 5-423 action, the Complaint still should be dismissed because the "lottery" allegedly operated by the PoolTogether Protocol is not a "lottery" as contemplated by the statute, as users can withdraw their money at any time, and thus do not risk anything.

Fourth, because Plaintiff has not lost anything, as explained above – nor could he, because he can withdraw his cryptocurrency at any time – Plaintiff has not suffered any injury in fact, and thus does not even have Article III standing to bring this claim.

Finally, in the event that the Complaint is not dismissed, Plaintiff's class allegations should be struck, as Plaintiff has a litany of conflicts with the proposed class that he purportedly represents, and because he cannot allege a nationwide class for claims arising under GOL § 5-423.[1]

## STATEMENT OF FACTS

The Complaint describes the PoolTogether Protocol as a "no-loss lottery" or a "prize-linked savings account" where "users deposit money with a counterparty and forgo the interest otherwise due on that money in exchange for a lottery ticket paying a prize valued at (roughly) the total amount of interest due to all depositers over the drawing period." (Compl. ¶ 22).

Users allegedly "send cryptocurrencies to PoolTogether's platforms," and "[e]ach dollar worth of value delivered to PoolTogether entitles the gambler to one 'ticket' for a lottery that is drawn by a random-number generator either daily or weekly." (Compl. ¶¶ 29-30). The

---

[1]     This argument and the preceding two arguments are discussed only briefly in this memorandum of law because, in order to reduce duplication for the Court, Dragonfly incorporates by reference the portions of Defendant PoolTogether Inc.'s brief (the "PoolTogether Brief") regarding these subjects, at Pages 10-25.

PoolTogether Protocol in turn lends out the funds it receives from users "to a 'liquidity pool' of cryptocurrencies from which unrelated people and entities can borrow or exchange cryptocurrencies." (Compl. ¶ 31). Users "forgo the 'yield'—or interest—that would otherwise be due from the liquidity pools." (Compl. ¶ 32). The PoolTogether Protocol "pools all the interest and divides it among a pre-specified number of winning tickets, keeping up to 50% of the yield that would otherwise be due as prizes as a 'reserve' to generate more yield, supposedly for future prizes." (Compl. ¶ 32).

According to the Complaint, in February 2021, Defendant Leighton Cusack sought to "transform" PoolTogether into a decentralized autonomous organization, more commonly known as a "DAO." (Compl. ¶ 47). In order to do so, Cusack and others allegedly decided to distribute POOL tokens to various individuals and entities. Plaintiff asserts that "[e]ach POOL token entitles its holder to one vote in the PoolTogether governance protocol." (Compl. ¶ 50). Plaintiff asserts that 5,000,000 POOL tokens were initially distributed to various individuals and entities, including:

> 15% of POOL tokens to previous gamblers and users who voted in initial straw polls on PoolTogether's operations; 12.44% of the PoolTogether "team" (Cusack and his initial collaborators); 7.52% to investors in PoolTogether, Inc.; 7.5% to be used for some initial projects not relevant here; and the remaining 57.54 to the "POOL Token Treasury," which was available for future distribution as determined by a vote of the holders of the other 42.46% of the tokens.

(Compl. ¶ 49). Plaintiff does not allege who these initial "investors" are, and does not allege that Dragonfly received any POOL tokens in February 2021.

A few months later, in May 2021, a proposal passed, via vote of the POOL tokenholders under which the POOL Token Treasury would transfer 411,479 POOL tokens to certain entities, including Dragonfly, in return for a total of $5,950,000 worth of U.S. Dollar Coins ("USDC") to

the POOL Token Treasury.  (Compl. ¶¶ 53-54).  According to the publicly available proposal itself

on the PoolTogether website, the 411,479 POOL tokens comprise "4.1% of total supply and 7.2%

of treasury."  https://gov.pooltogether.com/t/ptip-13-revised-treasury-diversification/1049.

The Complaint alleges that Dragonfly "works with PoolTogether to gain new lottery

participants from Asia."  (Compl. ¶ 145).

On October 21, 2021, Plaintiff allegedly paid $10 worth of Gemini Dollars ("GUSD") to

app.pooltogether.com.  (Compl. ¶ 91).  Plaintiff received ten tickets in the PoolTogether Protocol's

GUSD lottery.  (Compl. ¶ 91).  On January 17, 2022, Plaintiff allegedly paid $2 worth of USDC

to Defendant Dharma Labs, Inc.  (Compl. ¶¶ 96-100).   The Complaint is silent as to whether

Plaintiff won any of the lotteries in which he entered, or whether or not Plaintiff withdrew his

GUSD or USDC that he had delivered to the PoolTogether Protocol.

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, the complaint must include enough facts to

state a claim to relief that is plausible on its face."  *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir.

2014) (citation and internal quotation marks omitted).  A claim has "facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  "Although all allegations

contained in the complaint are assumed to be true, this tenet is inapplicable to legal conclusions."

*Id.* (citation and internal quotation marks omitted).  "[T]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Dane v.

UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (citation omitted).  Although the

court is "obligated to draw the most favorable inferences that plaintiff's complaint supports, [the

court] cannot invent factual allegations that he has not pled." *Costabile v. N.Y.C Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (citation omitted).

## I.   DRAGONFLY CANNOT BE HELD LIABLE UNDER GOL § 5-423 BECAUSE PLAINTIFF DID NOT PAY ANYTHING TO DRAGONFLY

Plaintiff has asserted two claims for relief, both under GOL § 5-423.  (Compl. ¶¶ 114-20). GOL § 5-423, which allows a plaintiff to recover monies paid for lottery tickets, only permits such plaintiff to recover against the person or entity to which the plaintiff paid money.  Because Plaintiff here did not pay any money to Dragonfly, as is required by the statute, Dragonfly must be dismissed.

### A.   Under the Plain Language of GOL § 5-423, Only the Legal Person to Whom Plaintiff Paid Money Can Be Liable

The court's "objective in construing a statute is to give effect to the legislative intent. Where the language of a statute is clear, it is presumed that that intent is reflected in the words chosen by the Legislature and the plain meaning they express." *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 87 N.Y.2d 574, 580 (1996).  Thus, the "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020).  *See also BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there.  Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (internal citation and quotation marks omitted).  A "defense that turns on a clear question of statutory interpretation is properly adjudicated in the context of a motion to dismiss." *Sollis v. Wolf*, No. 19 Civ. 5383 (PAE), 2020 U.S. Dist. LEXIS 166697, at *5 (S.D.N.Y. Sept. 11, 2020) (citation and quotation marks omitted).

Additionally, both New York and federal courts find that "[w]here the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage." *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 636 (1989); *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 172-73 (S.D.N.Y. 2012) (same); *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 474-75 (S.D.N.Y. 2017) (same). *See also Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. In the absence of strong indicia of a contrary legislative intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.") (internal citation and quotation marks omitted). And "[w]here the Legislature has spoken, indicating its policy preferences, it is not for courts to superimpose their own." *Morales v. County of Nassau*, 94 N.Y.2d 218, 224 (1999).

GOL § 5-423 is unambiguous. It states:

> Any person who shall purchase any share, interest, ticket, certificate of any share or interest, or part of a ticket, or any paper or instrument purporting to be a ticket or share or interest in any ticket, or purporting to be a certificate of any share or interest in any ticket, or in any portion of any lottery, may sue for and recover double the sum of money, and double the value of goods or things in action, which he may have paid or delivered in consideration of such purchase, with double costs of suit.
>
> Any person who shall have paid any money, or valuable thing, for a chance or interest in any lottery or distribution, prohibited by the penal law, may sue for and recover the same of <u>the person to whom such payment or delivery was made</u>.

(emphasis added).

The first paragraph of the statute provides that a purchaser of a lottery ticket has the ability to bring an action, and the second paragraph lists whom that purchaser can sue: "the person to

whom such payment or delivery was made."[2]  The use of the singular word "the" before "person" illustrates that the statute applies to the singular legal person to whom the user paid money.  *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("Here grammar and usage establish that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context.") (citation and quotation marks omitted); *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018) ("The use of the definite article 'the' indicates a singular court, whereas the indefinite article 'any' or 'a' denotes multiple courts."); *Renz v. Grey Advert., Inc.*, 135 F.3d 217, 222 (2d Cir. 1997) ("Placing the article 'the' in front of a word connotes the singularity of the word modified."); *United States ex rel. Minge v. Hawker Beechcraft Corp. (In re Hawker Beechcraft, Inc.)*, 515 B.R. 416, 428 (S.D.N.Y. 2014) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'") (citation omitted).  *Cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind.") (citation omitted).

Consistent with this interpretation, the New York Court of Appeals has explained – with respect to the prior version of the statute – that the "section prohibits the sale of lottery tickets, and makes such sale a misdemeanor, and the thirty-second section, which authorizes an action by the purchaser to recover double the sum paid, <u>by necessary implication designates the seller as the person against whom the action is to be brought</u>.  The defendants were, according to common

---

[2]     Plaintiff argues in his Pre-Motion Letter that the second paragraph of § 5-423 is irrelevant because Plaintiff only "invoke[s]" the first paragraph," which "provides broader rights."  (ECF No. 49 at 11-12).  Under Plaintiff's blinkered reading, any plaintiff would be able to circumvent the limitation contained in the second paragraph § 5-423 by merely "invoking" the first.  Plaintiff's novel theory would violate the canon that courts should "try to avoid statutory interpretations that render provisions superfluous," *United States v. Johnson*, 961 F.3d 181, 188 (2d Cir. 2020) (citation and internal quotation marks omitted), and would lead to any plaintiff only "invoking" the portion of a statute that benefits it.

understanding and in a legal sense, sellers of the tickets." *Grover v. Morris*, 73 N.Y. 473, 477 (1878) (emphasis added).

Accordingly, based on the statute's plain language, the only party Plaintiff may sue – if Plaintiff has a claim at all – is the entity to which Plaintiff allegedly made payment.  Plaintiff does not allege (nor could he) that he paid anything to <u>Dragonfly</u>, a mere investor in the PoolTogether DAO.  Plaintiff should not be permitted to rewrite the statute, to seek remedies against multiple defendants when the statute contemplates an action against a singular defendant.

### B. Plaintiff Cannot Bring a Claim for Aiding and Abetting a Violation of GOL § 5-423 or Conspiring to Violate GOL § 5-423

Although Plaintiff does not expressly plead an aiding and abetting claim, Plaintiff alleges in the Complaint that Dragonfly aided and abetted PoolTogether.  (Compl. ¶¶ 1, 15, 119).  To the extent that the Complaint could be read to assert an aiding and abetting claim, such claim would fail because GOL § 5-423 does not provide for secondary liability.

New York courts have repeatedly held that a statute that provides for liability against only certain defendants does not support a claim for aiding and abetting against other defendants unless explicitly stated in the statute.  *See Tyszka v. Make and Take Holding, LLC*, 72 A.D.3d 1620 (4th Dep't 2010) (finding that law firm was not liable under General Business Law § 691 when that statute only provided that an employee could be liable for aiding a statutory violation); *Solovay v. Greater N.Y. Sav. Bank*, 198 A.D.2d 27 (1st Dep't 1993) (finding that a bank's counsel could not be liable for aiding and abetting a bank's violation of [GOL] § 5-1504 because the only wrongful act was committed by the bank, not the counsel).

Similarly, the United States Supreme Court has held that a plaintiff cannot assert a cause of action for aiding and abetting where the statute in question does not provide for such a cause of action.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164

(1994) (interpreting this question in the context of § 10(b) of the Securities Exchange Act of 1934).

The Supreme Court explained that "when Congress enacts a statute under which a person may sue

and recover damages from a private defendant for the defendant's violation of some statutory

norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Id.* at

182.  It "is not plausible to interpret the statutory silence as tantamount to an implicit congressional

intent to impose § 10(b) aiding and abetting liability." *Id.* at 185.  The Supreme Court added:

> [T]he rules for determining aiding and abetting liability are unclear,
> in an area that demands certainty and predictability.  That leads to
> the undesirable result of decisions made on an ad hoc basis, offering
> little predictable value to those who provide services to participants
> in the securities business.  Such a shifting and highly fact-oriented
> disposition of the issue of who may be liable for a damages claim
> for violation of Rule 10b-5 is not a satisfactory basis for a rule of
> liability imposed on the conduct of business transactions.  Because
> of the uncertainty of the governing rules, entities subject to
> secondary liability as aiders and abettors may find it prudent and
> necessary, as a business judgment, to abandon substantial defenses
> and to pay settlements in order to avoid the expense and risk of going
> to trial.

*Id.* at 188-89 (internal citations and quotation marks omitted).

Federal courts in this circuit have applied the Supreme Court's reasoning in *Central Bank*

to numerous other statutes that do not expressly provide for aiding and abetting.  *See Rothstein v.*

*UBS AG*, 708 F.3d 82 (2d Cir. 2013) (no aiding and abetting liability under the Anti-Terrorism

Act); *Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297 (S.D.N.Y. 2010) (no aiding and abetting

liability under the Torture Victims Protection Act); *Bank v. Vivint Solar, Inc.*, No 18-CV-2555

(MKB), 2019 U.S. Dist. LEXIS 30638, at *13-14 (E.D.N.Y. Feb. 25, 2019) (expressing doubt that

a defendant can be liable under the TCPA for aiding and abetting a statutory violation), *report and*

*recommendation adopted by* 2019 U.S. Dist. LEXIS 48033 (Mar. 22, 2019); *Noble v. Weinstein*,

335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018) (no aiding and abetting liability for human trafficking

statute); *City of New York v. Milhelm Attea & Bros.*, No. 06-cv-3620, 2009 U.S. Dist. LEXIS

10

19351, at *7-19 (E.D.N.Y. Mar. 11, 2009) (no aiding and abetting liability under the Contraband Cigarette Trafficking Act and explaining that "[w]here a statute is specific as to who may be liable, courts have found that the express statutory language controls the scope of liability"); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 468 (S.D.N.Y. 1996) ("[T]here can be no claim based on aiding and abetting a RICO violation in view of [*Central Bank*].").

GOL § 5-423, by its terms, does not provide for aiding and abetting liability. By contrast, the New York State Legislature certainly knew how to provide for secondary liability in another provision of the GOL relating to lotteries. *See* GOL § 5-415 ("Every grant, bargain, sale, conveyance, or transfer of any real estate, or of any goods, chattels, things in action, or any personal property, which shall hereafter be made in pursuance of any lottery, or for the purpose of aiding and assisting in such lottery, game or other device, to be determined by lot or chance is hereby declared void and of no effect."). Providing for secondary liability in one GOL section, but not in § 5-423, indicates that the Legislature did not intend for § 5-423 to encompass secondary liability. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (citation omitted); *Cent. Bank of Denver*, 511 U.S. at 176-77 ("Congress knew how to impose aiding and abetting liability when it chose to do so. If, as respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not.") (internal citations omitted).

Accordingly, Plaintiff cannot sustain a claim against Dragonfly (or anyone) for aiding and abetting a violation of § 5-423.

Likewise, to the extent the Complaint could be read to state a claim for conspiracy to commit a violation of § 5-423 (which it certainly does not state explicitly), such claim would similarly fail because the statute does not provide for liability for conspiracy to commit a violation of § 5-423. *See Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 842 (2d Cir. 1998) ("[T]he reasoning leading to the Supreme Court's rejection of aiding and abetting liability under § 10(b) and Rule 10b-5 also applies to conspiracy. Critically, [as] in the case of aiding and abetting, there is no mention of conspiracy in the text of § 10(b). Just as Congress clearly knew how to impose aiding and abetting liability when it chose to do so, thereby suggesting that its absence from § 10(b) should not be disregarded, the existence of statutes expressly providing for conspiracy liability warrants the same conclusion here.") (internal citations omitted); *Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 215, 216-17 (E.D.N.Y. 2013) ("*Linde II*") (applying reasoning of *Central Bank of Denver*, *Rothstein*, and *Dinsmore* and holding that there is no cause of action for conspiracy to commit a violation of the Anti-Terrorism Act); *Charney v. Sullivan & Cromwell LLP*, 17 Misc. 3d 1105(A), 1105(A) (Sup. Ct. N.Y. Cnty. 2007) ("I have found no authority and plaintiff has offered none suggesting that New York recognizes a conspiracy to violate a civil rights enactment ([New York City Human Rights Law]). On the contrary, New York courts permit allegations of conspiracy only to connect the actions of separate defendants with an otherwise actionable tort.") (citation and internal quotation marks omitted).[3]

Plaintiff argues in his pre-motion letter that because New York permits secondary liability for <u>criminal</u> violations involving lotteries, secondary liability also should be available for private

---

[3]    *Varela v. Flintlock Const., Inc.*, No. 01-cv-2736, 2002 U.S. Dist. LEXIS 3521 (S.D.N.Y. Mar. 5, 2002), relied upon by Plaintiff in his Pre-Motion Letter (ECF No. 49 at 11), is inapposite. *Varela* involved the "statutory" tort of wrongful discharge under the New York State Human Rights Law. The court concluded that because one could bring a claim for conspiracy to commit the common-law tort of wrongful discharge, the court declined to dismiss a civil conspiracy claim linked to the same statutory tort. There is no similar "tort having a statutory basis" in this case.

plaintiffs seeking civil liability under GOL §5-423.  (ECF No. 49 at 12).  Plaintiff asserts that "[b]ecause it would be odd if somehow defendants were subject to criminal exposure but not civil exposure, courts often attempt to harmonize civil and criminal conspiracy liability."  (*Id.*).  But the one case Plaintiff cites for that proposition, *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 583 (E.D.N.Y. 2005) ("*Linde I*"), was effectively overruled by the Second Circuit in *Rothstein*.  The Second Circuit's holding in *Rothstein* directly forecloses Plaintiff's argument; the Second Circuit found that the fact that the Anti-Terrorism Act provides for secondary liability for criminal violations but not civil violations means that Congress did <u>not</u> intend to permit secondary liability for civil liability.  *See Rothstein*, 708 F.3d at 98 ("We doubt that Congress, having included in the ATA several express provisions with respect to aiding and abetting in connection with the criminal provisions, can have intended § 2333 to authorize civil liability for aiding and abetting through its silence.").  Indeed, a later decision in the very same *Linde* matter cited by Plaintiff, the District Court, in light of *Rothstein*, ultimately dismissed the plaintiff's civil conspiracy claims.  *Linde II*, 944 F. Supp. 2d at 217 ("[U]nder *Rothstein*, silence regarding civil conspiracy liability in § 2333(a) speaks louder than criminal conspiracy liability set forth in other provisions of the ATA.").  Accordingly, the fact that the legislature decided to generally provide for secondary criminal liability in Article 105 of the Penal Code, but not for civil liability, is evidence that secondary liability is <u>not</u> available for violations of § 5-423.

### C.   Plaintiff Has Not Sufficiently Pleaded that Certain Defendants Are Operating as a General Partnership

After Defendants filed their respective Pre-Motion Letters (ECF Nos. 31, 35, 36, 39, 42, 44), explaining why under § 5-423 Plaintiff could recover only against the person to which payment was made, Plaintiff pivoted and added a new theory in his Second Amended Complaint, that Dragonfly and certain other Defendants "and others" are, by virtue of their ownership of

13

POOL tokens, acting as general partners and are jointly and severally liable for any violation of § 5-423 with respect to any assets that he paid.  (Compl. ¶¶ 58-83; 183-86).

Plaintiff's novel theory should be rejected.  As an initial matter, we are not aware of <u>any</u> case holding that community members of a DAO are operating as a general partnership (nor did Plaintiff cite any such case in his Pre-Motion Letter).  But more fundamentally, Plaintiff has not come close to sufficiently pleading the existence of a general partnership.

As an initial matter, Plaintiff does not assert what state or country's laws apply to the question of whether or not the PoolTogether DAO is a general partnership, particularly because, as explained in greater detail below, the POOL tokenholders are an extremely large and disparate group of individuals and entities that do not reside in one particular jurisdiction.  In any event, regardless of what jurisdiction's law is applied, Plaintiff has not pleaded the existence of a general partnership.

Section 202(a) of the Revised Uniform Partnership Act states that the "association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership."  Yet, "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the user of the property." *Id.* §§ 202(c)(1). And the "sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived." *Id.* § 202(c)(2).  By contrast, a "person who receives a share of the profits of a business is presumed to be a partner in the business." *Id.* § 202(c)(3).  The official comments to § 202 make clear that "[o]wnership involves the power of ultimate control.  To state that partners are co-owners of a business is to state that they each have the power of ultimate control."  By contrast, "passive

14

co-ownership of property by itself, as distinguished from the carrying on of a business, does not establish a partnership."

New York law contains extremely similar provisions to the Revised Uniform Partnership Act.  N.Y. P'Ship L. § 11.  And New York courts will dismiss claims of a general partnership where there is "nothing more than a conclusory allegation that any losses would be borne equally by the parties."[4]  *Slabakis v. Schik*, 164 A.D.3d 454, 455 (1st Dep't 2018).  *See also Tutor Perini Bldg. Corp. v. Port. Auth.*, 191 A.D.3d 569, 571 (1st Dep't 2021) ("Tutor Perini has not alleged the requisite acts manifesting the intent of Port Authority and the developer to be associated as joint venturers."); *Ely v. Perthuis*, 12 Civ. 1078 (DAB), 2013 U.S. Dist. LEXIS 14952, at *17 (S.D.N.Y. Jan. 29, 2013) (dismissing partnership allegations where "Plaintiff never pled facts alleging that they agreed to share losses in addition to profits").

The alleged PoolTogether DAO's operations bear no resemblance to a general partnership running a for profit business.  The PoolTogether DAO is decentralized; there are no allegations that any single member has the ability alone to make any changes to the Protocol.  Indeed, Plaintiff cites a quote from Mr. Cusack explicitly stating that the PoolTogether Protocol is "truly decentralized."  (Compl. ¶ 77).  Plaintiff also admits that "[e]ach POOL token entitles its holder to one vote in the PoolTogether governance protocol."  (Compl. ¶ 50).  Accordingly, there are literally millions of voteable tokens.  (Compl. ¶ 48).  The number of POOL tokenholders at any given time is unknown but in the thousands, largely unknown to each other, in almost all cases unidentifiable, each governed by the local laws of whatever jurisdiction in which they reside.  Each has varying degrees of involvement in the DAO.  A person can hold a POOL token for long durations, or for mere seconds.  There is minimal, if any, coordination among tokenholders.

---

[4]     While *Slabakis* technically concerned a "joint venture," New York courts treat joint ventures and general partnerships the same.  *See Kitz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).

Indeed, under Plaintiff's view that holding POOL tokens makes one a general partner, Plaintiff's allegation that 15% of 5,000,000 tokens (i.e., 750,000 tokens) were distributed to the PoolTogether Protocol's "gamblers and users" (Compl. ¶ 49) means that many class members are also general partners.

Underscoring the implausible nature of Plaintiff's allegations, the Complaint never actually defines who the general partners are. Plaintiff initially alleges that "Cusack and the Investor Defendants operate a general partnership" and later states that Defendants Cusack, Dragonfly, Nascent, Galaxy, ParaFi, Maven 11 "and others" are general partners. (Compl. ¶¶ 1, 184-86). But Plaintiff also alleges that these entities became general partners as a result of owning POOL tokens, meaning that presumably all POOL tokenholders are somehow general partners. (Compl. ¶ 58). And Plaintiff alleges that ParaFi, Galaxy, Dragonfly, Nascent, and Maven 11 obtained a total of only 411,479 POOL tokens in May 2021 (Compl. ¶ 53),[5] only a small fraction of the 5,000,000 POOL tokens that had been distributed in February 2021, or the 10,000,000 tokens that potentially could be issued. (Compl. ¶ 48). Indeed, the PoolTogether DAO's proposal to transfer these 411,479 POOL tokens to these entities – referenced in the Complaint – clearly states that the 411,479 POOL tokens comprise "4.1% of total supply and 7.2% of treasury." https://gov.pooltogether.com/t/ptip-13-revised-treasury-diversification/1049. Plaintiff admits that the initial distribution of 5,000,000 tokens included 15% (i.e., 750,000 tokens) to "previous gamblers and users who voted in initial straw polls on PoolTogether's operations," who are presumably class members. Plaintiff's allegations provide no sensible basis at all to plead that the defendants in this case are partners, but others are not.

---

[5]    There are no allegations that Dragonfly ever obtained any POOL tokens prior to May 2021.

Plaintiff fares no better with his conclusory allegation that the POOL tokenholders are general partners because they "carry on PoolTogether as a for-profit" business. (Compl. ¶ 68). Plaintiff does not actually allege any <u>facts</u> in support of that contention. Crucially, Plaintiff never actually alleges that the POOL holders split any profits generated by the PoolTogether Protocol, or even that there <u>are</u> any profits. To the contrary, Plaintiff alleges that the PoolTogether Protocol keeps up to 50% of the interest as a "reserve" to "generate more yield, supposedly for future prizes" (Compl. ¶ 32), but does not allege that any such reserve is paid out to POOL tokenholders as profit. There are no factual allegations that there has been any kind of profit sharing to the POOL tokenholders. Indeed, the PoolTogether website confirms that the PoolTogether Protocol does not actually make money. *Questions and Answers*, PoolTogether, https://pooltogether.com/faq/ ("PoolTogether does not make money."). Similarly, there are no allegations whatsoever that the POOL holders would be responsible for any losses suffered by the PoolTogether Protocol.

In order to buttress its faulty idea that POOL tokenholders are general partners, Plaintiff includes out-of-context quotes from news articles or elsewhere wherein individuals affiliated various other Defendants – or other individuals with no affiliation to this litigation – have supposedly admitted that they carry on PoolTogether as a for-profit business. (Compl. ¶¶ 68-76). None of those quotes are Dragonfly or from any individuals affiliated with Dragonfly. And crucially, Plaintiff's strained characterization of these quotes is completely false. None of those quotes actually states that the PoolTogether DAO splits any profits among the POOL tokenholders. Instead, the alleged quotes state that:

- DAOs <u>in general</u> (not necessarily the PoolTogether DAO, but DAOs generally) may give tokenholders a "right to the cash flow" (Compl. ¶ 69);

- the PoolTogether Protocol was going to succeed (Compl. ¶ 70)

- the PoolTogether Protocol reserve would serve as a "key long-term moat" to protect the PoolTogether Protocol (Compl. ¶ 72);

- investors who received POOL tokens in May 2021 would accrue to the benefit of, and not hurt, other community members and tokenholders (Compl. ¶¶ 71, 73);

- buying back POOL tokens using reserve money was a good idea (Compl. ¶ 74);

- the PoolTogether Protocol might turn a profit in the future (without explaining how profits would be shared) (Compl. ¶ 75); and

- the reserve amounts – to which this quote refers as "profits" – are "controlled" by POOL tokenholders (but again does not state how those profits are shared) (Compl. ¶ 76).[6]

None of those quotes, or the Complaint's other allegations – not one – support the argument that POOL holders share profits or losses, or have the other characteristics necessary of a partnership to enable conclusory allegations to survive a motion to dismiss.

In sum, there is no basis to treat Dragonfly as a general partner by virtue of its ownership of some small number of POOL tokens. Generalized, conclusory allegations of partnership cannot survive dismissal.

## II.   THE POOLTOGETHER PROTOCOL "LOTTERY" DID NOT VIOLATE GOL § 5-423 BECAUSE USERS DID NOT RISK ANYTHING OF VALUE

Even if Dragonfly was a proper defendant in this litigation, the Complaint against it should still be dismissed – as well as against the other Defendants – because the PoolTogether Protocol's

---

[6]     Plaintiff also does not allege that this quote was said by an Investor Defendant, but rather by a "major contributor to the PoolTogether protocol (who may also have a role at PoolTogether, Inc." (Compl. ¶ 76).

so-called "lottery" is not covered under GOL § 5-423. Dragonfly incorporates by reference the portion of the PoolTogether Inc. Brief explaining why the "lottery" alleged by Plaintiff is not within the ambit of the statute.

### III. BECAUSE PLAINTIFF DOES NOT RISK ANY MONEY, HE DOES NOT HAVE ARTICLE III STANDING TO BRING THIS LAWSUIT

Because Plaintiff did not actually risk any money when he entered the PoolTogether Protocol lotteries, he has not suffered any injury, and thus does not have Article III standing to sue. Dragonfly incorporates by reference the portion of the PoolTogether Inc. Brief explaining why Plaintiff lacks Article III standing and why Plaintiff cannot manufacture standing by inflicting harm on himself.

Plaintiff's lack of standing is even more pronounced with respect to Dragonfly, a mere holder of POOL tokens with which Plaintiff has no relationship and from which Plaintiff has not suffered any injury. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) ("Mahon, however, fails to explain why a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties."); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 94 (2d Cir. 2018) ("[W]ith respect to each asserted claim" against each defendant, "a plaintiff must always have suffered a distinct and palpable injury to herself.") (internal citations and quotations omitted).

As Plaintiff does not have standing to bring his claims, the Complaint must be dismissed for lack of subject matter jurisdiction.[7]

---

[7]  *See Mahon*, 683 F.3d at 62 ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear the claim") (citation and quotation marks omitted).

**IV.**      <u>**PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK**</u>

Plaintiff's class allegations should be struck because he is not an adequate representative due to his conflicts of interest with the class members, and his putative class cannot be sustained because GOL § 5-423 has no reach outside New York State.  Dragonfly incorporates by reference the portion of the PoolTogether Inc. Brief explaining why the class allegations should be struck.

<u>**CONCLUSION**</u>

For the foregoing reasons, Dragonfly respectfully requests that the Court dismiss the Complaint in its entirety as against Dragonfly, or, alternatively, strike the class allegations, and grant such other and further relief as is just and proper.


Dated: New York, New York
            April 19, 2022                                  MORRISON COHEN LLP

                                                                     By:   /s/ Jason Gottlieb
                                                                               Jason Gottlieb
                                                                               Michael Mix
                                                                               Alexandra W. Wang
                                                                               909 Third Avenue
                                                                               New York, New York 10022
                                                                               (212) 735-8600

                                                                               *Attorneys for Defendant Dragonfly Digital
                                                                               Management, LLC*