**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH KENT,<br><br>      Plaintiff,<br><br>      v.<br><br>POOLTOGETHER, INC.; DHARMA LABS, INC.; OZONE NETWORKS, INC.; LEIGHTON CUSACK; KAIN WARWICK; STANISLAV KULECHOV; DRAGONFLY DIGITAL MANAGEMENT, LLC; NASCENT US, LLC; NASCENT LIMITED PARTNERSHIP; STICHTING MAVEN 11 FUNDS; GALAXY DIGITAL TRADING HK LIMITED, LP; PARAFI CAPITAL, LP; and COMPOUND LABS, INC.,<br><br>      Defendants. | Case No. 21-cv-6025-FB-CLP |

**REPLY IN SUPPORT OF DEFENDANTS OZONE NETWORKS, INC. AND DHARMA LABS, INC.'S MOTION TO DISMISS**

Jonathan H. Blavin (*admitted pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
(415) 512-4000

Erin J. Cox (*admitted pro hac vice*)
April Youpee-Roll (*admitted pro hac vice*)
Brandon Teachout *(admitted pro hac vice)*
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

John P. Amato
THOMPSON COBURN HAHN & HESSEN LLP
488 Madison Ave #14
New York, NY  10022
(212) 478-7200

*Attorneys for Defendants Ozone Networks, Inc. and Dharma Labs, Inc.*

## **TABLE OF CONTENTS**

                                                                                                                                  **Page**

I.     INTRODUCTION ................................................................................................... 1

II.    PLAINTIFF LACKS STANDING TO SUE DHARMA ........................................ 1

       A.     Plaintiff's Self-Inflicted Injury Fails to Create Standing .......................... 1

       B.     Dharma's Fee is Not Fairly Traceable To The Challenged Conduct ....................... 4

III.   N.Y. GEN. OBLIG. LAW § 5-423 DOES NOT REACH DHARMA .............................. 5

       A.     The Statute Penalizes Only Sellers of Lottery Tickets ............................................ 5

       B.     The Complaint Does Not Allege Dharma is a Seller of Tickets ............................. 7

       C.     Secondary Liability is Not Available Under The Statute ....................................... 8

       D.     Plaintiff Has Failed to State a Secondary Liability Claim Against Dharma ............ 9

IV.   CONCLUSION .................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*American Tobacco Co. v. Patterson*,
 456 U.S. 63 (1982)............................................................................................................5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..........................................................................................................8

*Bandler v. Town of Woodstock*,
 832 F.App'x 733 (2d Cir. 2020) .......................................................................................2

*Central Bank of Denver v. First Interstate Bank of Denver*,
 511 U.S. 164 (1994)..........................................................................................................9

*Chamaidan v. Tomy B. Haircare Inc.*,
 No. 17-CV-06948 (JMA) (ARL), 2019 WL 4917895 (E.D.N.Y. Sep. 30,
 2019) ................................................................................................................................3

*Chevron Corp. v. Donziger*,
 833 F.3d 74 (2d Cir. 2016)................................................................................................4

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013).......................................................................................................2, 3

*Evans v. Linden Rsch., Inc.*,
 No. C 11-01078 DMR, 2012 WL 5877579 (N.D. Cal. Nov. 20, 2012) ...........................4

*Federal Election Commission v. Cruz*,
 142 S.Ct. 1638 (2022).....................................................................................................2, 3

*Friedl v. City of New York*,
 210 F.3d 79 (2d Cir. 2000)................................................................................................7

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982)..........................................................................................................3

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
 955 F.Supp. 248 (S.D.N.Y. 1997) ....................................................................................9

*Hussain v. Comm'r (John Doe) of Nassau Cnty. Police Dep't*,
 368 F.Supp.2d 216 (E.D.N.Y. 2005) ................................................................................7

*In re Agape Litig.*,
 773 F.Supp.2d 298 (E.D.N.Y. 2011) ..............................................................................10

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*In re Amaranth Nat. Gas Commodities Litig.*,
   730 F.3d 170 (2d Cir. 2013)................................................................................................10

*MacNeil v. Berryhill*,
   869 F.3d 109 (2d Cir. 2017)..................................................................................................6

*Mattel, Inc. v. Barbie-Club.com*,
   310 F.3d 293 (2d Cir. 2002)..................................................................................................6

*McConnell v. FEC*,
   540 U.S. 93 (2003).................................................................................................................2

*Pittman by Pittman v. Grayson*,
   149 F.3d 111 (2d Cir. 1998)..................................................................................................8

*Rutherford v. Cesar's Mexican Rest., LLC*,
   No. 19CV1416-LAB (JLB), 2019 WL 4193392 (S.D. Cal. Sept. 3, 2019)..........................3, 4

*Silvercreek Mgmt. v. Citigroup, Inc.*,
   248 F.Supp.3d 428 (S.D.N.Y. 2017).....................................................................................8

*St. Pierre v. Dyer*,
   208 F.3d 394 (2d Cir. 2000)..................................................................................................1

*White v. Just Born, Inc.*,
   No. 2:17-cv-04025-NKL, 2018 WL 3748405 (W.D. Mo. Aug. 7, 2018)...............................2

*Wilson v. PTT, LLC*,
   No. C18-5275RSL, 2021 WL 211532 (W.D. Wash. Jan. 21, 2021) .....................................2

**STATE CASES**

*Grover v. Morris*,
   73 N.Y. 473 (1878) ........................................................................................................6, 7, 9

*Long v. State*,
   7 N.Y.3d 269 (2006) ..............................................................................................................6

*Miele v. Am. Tobacco Co.*,
   2 A.D.3d 799 (2d Dept. 2003) ...............................................................................................9

*Sheehy v. Big Flats Cmty. Day, Inc.*,
   73 N.Y.2d 629 (1989) ............................................................................................................8

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**STATUTES - OTHER**

N.Y. Gen. Oblig. Law § 5-423 ................................................................................................ passim

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 876 ............................................................................................. 9

**I.      INTRODUCTION**

The allegations of the Second Amended Complaint ("Complaint") make clear that the Dharma app simply provided users with an interface by which they could "transfer money from traditional bank accounts to decentralized-finance applications" like the PoolTogether protocol, no different than transferring funds to make purchases using services like Venmo or PayPal. (SAC ¶ 84.)  These allegations doom Plaintiff's tacked-on claims against Dharma Labs, Inc. and Ozone Networks, Inc. (together, "Dharma"), because, *inter alia*, Dharma in no conceivable way is a "seller" of unlawful lottery tickets under § 5-423.  Plaintiff's Opposition confirms as much, seeking to rewrite the statute in ways that contradict its plain text and controlling precedent, and inventing "facts" out of whole cloth that contradict the Complaint's allegations.  Plaintiff's fundamentally flawed claims against Dharma should be dismissed with prejudice.

**II.     PLAINTIFF LACKS STANDING TO SUE DHARMA**

**A.     Plaintiff's Self-Inflicted Injury Fails to Create Standing**

Spurred by "grave[ ] concern[s]" about "the cryptocurrency ecosystem," Plaintiff deposited cryptocurrency into the PoolTogether protocol and immediately sued ten Defendants, alleging that the protocol constitutes an illegal lottery. (ECF No. 1 ¶¶ 2-12, 24-38.)  Two months into this litigation—after Plaintiff learned that his claims were potentially subject to arbitration—he utilized the Dharma app to make a second deposit into the protocol.  (SAC ¶¶ 91, 96, 100-101.)  Plaintiff admittedly took these actions, and paid associated fees, to inflict additional "injury" on himself to avoid arbitration.  (ECF No. 60 at 3 [describing intent to amend complaint to allege "claims based on a post-complaint transaction" that would "not [be] subject to arbitration"].)  By the terms of his own theory, Plaintiff's decision to use Dharma to make a second deposit into the protocol constituted "an unreasonable decision . . . to bring about a harm that he knew to be avoidable."  *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000).  Any

resulting injury he alleges is, as a result, "so completely due to the plaintiff's own fault as to break the causal chain." *Id*. at 402; *cf. White v. Just Born, Inc.*, No. 2:17-cv-04025-NKL, 2018 WL 3748405, at *5 (W.D. Mo. Aug. 7, 2018) (plaintiff "who 'knew about' [unlawful] practice and 'purchased ... [the] products anyway,' was not injured by the practice").[1]

Plaintiff all but concedes that his purported standing here is self-manufactured. Instead, his response to this threshold issue—buried near the end of his 75-page brief—is that no self-inflicted injury exception exists in standing law. (Opp'n at 61.) This claim is contrary to binding precedent. The Supreme Court has made clear that allowing plaintiffs to "manufacture standing merely by inflicting harm on themselves" would "improperly water[ ] down the fundamental requirements of Article III." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see also McConnell v. FEC*, 540 U.S. 93, 228 (2003) (overruled on other grounds by *Citizens United v. FEC*, 558 U.S. 310 (2010)) (alleged injury which "stem[med] not from the operation" of a challenged statute, but from a plaintiff's "personal choice" did not create standing). Second Circuit precedent is equally clear on this issue. *Bandler v. Town of Woodstock*, 832 F.App'x 733, 734 (2d Cir. 2020) ("a plaintiff must establish that the injury was not 'self-inflicted'" to show traceability).

*Federal Election Commission v. Cruz*, 142 S.Ct. 1638 (2022), on which Plaintiff principally relies in his Opposition, does not alter this rule. *Cruz* held that "an injury *resulting from the application or threatened application of an unlawful enactment* remains fairly traceable

---

[1] Because no "tickets" were "sold" by Dharma, *see* Section III.B *infra*, and because Plaintiff retains the ability to withdraw his deposits to the protocol, *see* Opp'n at 61, the claims against Dharma are distinguishable from *Wilson v. PTT, LLC*, No. C18-5275RSL, 2021 WL 211532 (W.D. Wash. Jan. 21, 2021), where the plaintiff "lost $1.99" when he "purchased 20,000 [virtual] coins" *from the defendant* to play a video game. *Id*. at *1-2. *Wilson* also involved only one purchase of virtual coins. Unlike here, the plaintiff in *Wilson* did not purchase virtual coins, challenge the game as an illegal lottery, and then subsequently purchase additional coins through a different interface to avoid a binding arbitration provision.

2

to such application, even if the injury could be described *in some sense* as willingly incurred." *Id.* at 1647 (emphasis added). The Court explained that the alleged "injuries [we]re directly inflicted by the [ ] threatened enforcement of" the law the plaintiff challenged. *Id.* In other words, the plaintiff's injuries were not "self-inflicted" because the plaintiffs there were, in fact, "subject to" the challenged law, and "face[d] genuine legal penalties" for noncompliance. *Id.* Here, Plaintiff faces no such risk; he is neither "subject to" New York's lottery prohibition, nor will he face "genuine legal penalties" for noncompliance. Importantly, *Clapper* remains good law after *Cruz*: the Court did not overrule *Clapper*, but distinguished the alleged injury there as an effort to "manufacture standing" where Plaintiffs "could not show that they had been or were likely to be subjected to" a challenged policy. *Id.* Plaintiff's reliance on *Cruz* is unavailing.

Plaintiff also contends that he has Article III standing as a "tester." But Plaintiff identifies no basis for the recognition of "tester" status under N.Y. Gen. Oblig. Law § 5-423, and none exists. "Testers" have been found to have standing in discrimination litigation where an illegal practice infringes on a statutory right (e.g., to "truthful information") or the tester is subject to a facially discriminatory law. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (recognizing tester standing under the Fair Housing Act because Congress "conferred on all 'persons' a legal right to truthful information about available housing"). Unlike the FHA, New York's lottery prohibition does not confer a general legal right to "all persons" to, *e.g.*, truthful information about housing. Plaintiff cites no case supporting the recognition of "tester" status as a basis for standing here. *Cf. Chamaidan v. Tomy B. Haircare Inc.*, No. 17-CV-06948 (JMA) (ARL), 2019 WL 4917895, at *6 n.6 (E.D.N.Y. Sep. 30, 2019) ("[I]t is unclear whether the Second Circuit has fully embraced 'tester' status . . . as a basis for Article III standing" under the ADA); *Rutherford v. Cesar's Mexican Rest., LLC*, No.

3

19CV1416-LAB (JLB), 2019 WL 4193392, at *2 (S.D. Cal. Sept. 3, 2019) ("simply being a tester does not automatically confer standing, any more than simply being a customer does").

### B.    Dharma's Fee is Not Fairly Traceable To The Challenged Conduct

Plaintiff does not respond to Dharma's argument that the payment of a generally applicable fee for "transfer[ring] money from traditional bank accounts to decentralized-finance applications" is not fairly traceable to the challenged conduct at issue—the alleged operation of an illegal lottery by PoolTogether. Instead, Plaintiff now asserts that Dharma charged a fee "for granting him access to the lottery." (Opp'n at 65.) This new claim contradicts the allegations of the Complaint that PoolTogether was "one of four specific applications to which Dharma users could send cryptocurrency via their U.S. bank accounts," and that Dharma "charged users fees for *executing transactions*." (SAC ¶¶ 86-87, emphasis added.) If Plaintiff had purchased lottery tickets using Venmo or Visa, he could not assert that those services' generally applicable transaction fees were traceable to the unlawful nature of the lottery. No different here.

Put simply, Plaintiff has failed to plead any "causal nexus" between the generally applicable fees charged for Dharma's depositing services and the alleged operation of an illegal lottery. *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) ("plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury"); *Evans v. Linden Rsch., Inc.*, No. C 11-01078 DMR, 2012 WL 5877579, at *9 (N.D. Cal. Nov. 20, 2012) ("disconnection" between fees paid and claimed injury "casts … doubt" on "existence of injury"). Nor could he; the allegations of the Complaint establish that Dharma did not charge Plaintiff a fee for "granting him access" to PoolTogether. Plaintiff first accessed the protocol more than two months before he ever downloaded the Dharma app. (SAC ¶¶ 91, 96.) Dharma's services are purely incidental to his claims, and any fee Dharma charged for "executing transactions" bears no relationship to the challenged conduct.

4

## III. N.Y. GEN. OBLIG. LAW § 5-423 DOES NOT REACH DHARMA[2]

### A. The Statute Penalizes Only Sellers of Lottery Tickets

Even if Plaintiff had adequately alleged injury, *and* could establish that the protocol constitutes an unlawful lottery (which he cannot), Dharma remains outside the scope of § 5-423 because the statute only applies to those who *sell* lottery tickets and Plaintiff has not alleged that any consideration was "paid or delivered" to Dharma.  Plaintiff attempts to expand the law to authorize recovery against an unbounded universe of individuals, all but acknowledging the degree to which his reading stretches the plain meaning of the statute.  (*See* Opp'n at 33 [speculating that statute "perhaps" allows recovery "against others"].)  The Court should reject this construction: it produces absurd results, fails to follow basic principles of statutory interpretation, and runs contrary to controlling New York Court of Appeals' precedent.

Briefly, Plaintiff claims that the first paragraph of § 5-423 entitles the buyer of an illegal lottery ticket to "a refund plus an effective penalty against the true operators of the lottery if they can be located, and perhaps against others," while the second paragraph authorizes the buyer to seek a refund from the person (or agent) "who sells lottery tickets."  (Opp'n at 33, 35.)  Plaintiff's statutory construction makes no sense.  As an initial matter, the first paragraph of § 5-423 specifies recovery of double the amount "paid or delivered" for the tickets, which of course would be *to the seller*.  *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.").  What is more, Plaintiff interprets the first paragraph of the statute to afford double recovery against a "broad array" of parties, *including* sellers.  (Opp'n at 35; SAC at Prayer for

---

[2] Dharma also joins PoolTogether, Inc.'s arguments that the PoolTogether protocol does not constitute an unlawful lottery under N.Y. Gen. Oblig. Law § 5-423 (PoolTogether Reply at 9-14), and that Plaintiff's class allegations should be struck (PoolTogether Reply at 15-18).

Relief [seeking double recovery against all Defendants].)  This reading renders the second paragraph superfluous, as double recovery would encompass consideration.  *See, e.g.*, *MacNeil v. Berryhill*, 869 F.3d 109, 113 (2d Cir. 2017) ("statutory construction which renders one part meaningless should be avoided").

More fundamentally, Plaintiff offers no explanation why the legislature would create a more *severe* statutory penalty of double recovery from parties other than "sellers" who are less directly involved with a scheme, particularly where "the object of the section was to discourage the business of *selling lottery tickets*."  *Grover v. Morris*, 73 N.Y. 473, 477 (1878) (emphasis added).  It would be illogical for the Legislature to allow a Plaintiff to seek *additional and greater* remedies against an undefined and more attenuated swath of other persons or entities beyond sellers.  *See, e.g., Long v. State*, 7 N.Y.3d 269, 273 (2006) (courts should construe statutes "to avoid objectionable, unreasonable or absurd consequences").  And to do so would essentially render moot the Legislature's specific and intentional decision only to permit recovery against sellers in the statute.  *See Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 300-01 (2d Cir. 2002) (it "would be odd for Congress to have taken pains to enact subsection (d)(2)(A) with its specific procedure for filing an in rem action 'in the judicial district in which the domain registrar . . . is located,' only to qualify, and indeed nullify, that circumscribed requirement by effectively creating nationwide in rem jurisdiction in subsection (d)(2)(C))").

At any rate, Plaintiff's construction is squarely foreclosed by *Grover*.  There, the New York Court of Appeals determined that both the direct seller (an agent) and the owners and managers of the lottery (the principals) were liable for double recovery because all of the defendants "were, according to common understanding and in a legal sense, sellers of the tickets."  *Grover*, 73 N.Y. at 477.  In other words, *Grover* merely applied agency principles to

define the term "seller." Of course, there is no allegation or claim here (nor could there be) that Dharma ever acted as the "agent" of PoolTogether. Further, the Court of Appeals in *Grover* specifically held that the provision of the statute "which authorizes an action by the purchaser to recover double the sum paid"—in other words, the first paragraph of § 5-423—"by necessary implication *designates the seller* as the person against whom the action is to be brought." *Id*. (emphasis added). In sum, *Grover* confirms that the double recovery provision also "is to be brought" only against the "seller," and defines "seller" pursuant to the "common understanding" and "legal sense." Plaintiff's contrary reading of the statute to allow recovery "against a broad array of defendants," (Opp'n at 35), finds no support in the plain text of the statute and is barred by the Court of Appeals' holding.

### B. The Complaint Does Not Allege Dharma is a Seller of Tickets

The allegations of the Complaint establish that Dharma does not fall within the scope of the statute as a seller. Conceding as much, Plaintiff implausibly attempts now to rewrite the Complaint. The Court should reject that improper effort and dismiss Plaintiff's claims with prejudice. *See Hussain v. Comm'r (John Doe) of Nassau Cnty. Police Dep't*, 368 F.Supp.2d 216, 218 (E.D.N.Y. 2005) (dismissing with prejudice where factual assertion in opposition to motion to dismiss was "contradicted" by complaint's allegations making "clear" that claims were time-barred); *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (error to rely "on factual allegations contained in legal briefs" in "ruling on a 12(b)(6) motion").

In the Complaint, Plaintiff alleges only that Dharma "provided an interface" which "linked traditional bank accounts to blockchain-based products," like PoolTogether, (SAC ¶¶ 3, 187), and that he "purchased . . . 2 USDC tickets *from PoolTogether*" after he deposited funds using Dharma, (SAC ¶ 101 (emphasis added)). The Complaint does not allege that Plaintiff "paid or delivered" any consideration for tickets *to Dharma*. (*See, e.g,* SAC at ¶¶ 31, 185

7

[referencing delivery to PoolTogether], and ¶ 86 [Dharma charged a fee "for executing transactions"].) Acknowledging that such allegations do not render Dharma a "seller"[3], Plaintiff now asserts for the first time that "Dharma agreed with" PoolTogether's founder to "offer PoolTogether tickets on Dharma's app and to send the money straight to the PoolTogether DAO with a fee kept by Dharma," and that the "tickets are sent through Dharma." (Opp'n at 40.) The only citation for this is a paragraph of the Complaint alleging *no action* on Dharma's part. (SAC ¶ 88.) Plaintiff also improperly points to various screenshots, none of which appear in the Complaint (or even mention "tickets"). (Opp'n at 36-39.) The Court must disregard these new, contradictory assertions; under the allegations of the Complaint, it is clear that Plaintiff fails to plead Dharma is a "seller" under § 5-423. Simply providing an interface to allow users to deposit funds to a third party (no different than Venmo or PayPal) does not render Dharma a seller of items by that third party.

      **C.**     <u>**Secondary Liability is Not Available Under The Statute**</u>

Plaintiff's argument that Dharma may be held secondarily liable relies on precedent analyzing *common law torts*, not statutory causes of action.[4] Erroneously relying on these cases, Plaintiff claims that secondary liability is available under New York statutes unless the same "bars aiding-and-abetting liability." (Opp'n at 45.) This is simply not the law; where the Legislature has "made express provision for civil remedy," as in § 5-423, "the courts should ordinarily not attempt to fashion a different remedy, with broader coverage[.]" *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 636 (1989). (*See* Dharma Mot. at 11-14.)

---

[3] The Complaint's conclusory and unsupported claim that Dharma "sold" tickets (SAC ¶ 187), is not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).
[4] *See* Opp. at 43-44 (citing *Pittman by Pittman v. Grayson*, 149 F.3d 111, 122–23 (2d Cir. 1998) (e.g., intentional infliction of emotional distress); *Silvercreek Mgmt. v. Citigroup, Inc.*, 248 F.Supp.3d 428, 455 (S.D.N.Y. 2017) (negligent misrepresentation)).

8

Indeed, in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), the Supreme Court refused to apply secondary liability principles to a § 10(b) claim, even though that cause of action was judicially implied.  Here, the case for not applying such principles is even stronger given § 5-423's express statutory right of action limiting relief against sellers only.  *See Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F.Supp. 248, 256–57 (S.D.N.Y. 1997) ("the reasoning of *Central Bank* should have even more force" when applied to RICO because "the common law doctrine of aiding and abetting is presumably more readily applied to a judicially implied cause of action . . . than a statutory right of action").

Finally, Plaintiff claims, without support, that permitting secondary liability here would not "disturb the statutory scheme" (Opp'n at 45), but fails to explain how reading such liability into § 5-423 does not undermine the legislature's statutory limitation of whom one "may sue . . . and recover" from under the statute—only the seller.  *See Grover*, 73 N.Y. at 477 (§ 5-423 "designates the seller as the person against whom the action is to be brought").

### D. Plaintiff Has Failed to State a Secondary Liability Claim Against Dharma

Even if secondary liability were available under § 5-423, Plaintiff cannot show that Dharma falls within the applicable common-law limitations of (1) knowledge and (2) providing substantial assistance in the commission of the wrongdoing.  *Miele v. Am. Tobacco Co.,* 2 A.D.3d 799, 805 (2d Dept. 2003).  Importantly, courts evaluating these elements focus on whether the defendant *knew* that the actions of another "constitute[d] a breach of duty,"[5] which Plaintiff admittedly has not alleged, and that the defendant provided substantial assistance in furthering the alleged underlying wrong, not merely in providing "routine business services."

---

[5] Although Plaintiff disputes this knowledge standard (yet disregards the cases referencing it), it also is the standard set forth by the Restatement (Second) of Torts § 876 (abettor must "know[] that the other's conduct constitutes a breach of duty and give[] substantial assistance").

9

(*See* Dharma Mot. at 13.) Plaintiff makes no effort to distinguish Dharma's authority on these points, presumably because he cannot allege that Dharma meets this standard. The allegations of the Complaint make clear that the routine deposit services Dharma provided to PoolTogether are no different than the services it provided to several other cryptocurrency protocols—allowing users to "link" and deposit and "send cryptocurrency via their U.S. bank accounts." (SAC ¶¶ 3, 87.) The provision of such commonplace services does not constitute aiding and abetting. *See, e.g., In re Agape Litig.*, 773 F.Supp.2d 298, 322-325 (E.D.N.Y. 2011) (finding that defendant's issuance of a remote depository system and other conventional banking services to the perpetrator of a Ponzi scheme did "not constitute substantial assistance" for purposes of investors' claim that bank aided and abetted fraud); *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 185 (2d Cir. 2013) (performance of "routine clearing services cannot constitute the aiding and abetting of fraud under New York law").

Plaintiff also now claims that Dharma "prominently advertised it could grant access to" a "lottery." (Opp'n at 65.) As noted, this "access" allegation appears nowhere in the Complaint. The Complaint simply alleges that PoolTogether was "advertised" in the Dharma app, and that Plaintiff saw an "icon" which "had PoolTogether's logo on it and read 'Deposit to PoolTogether to win up to $80,000.'" (SAC ¶¶ 87, 98.) There is no allegation that Dharma had any role in preparing such advertising, nor does Plaintiff contend that the advertising itself was unlawful. More fundamentally, any PoolTogether "advertising" hosted in the Dharma app does not show that Dharma itself knew of any violation of a breach of duty, or that it provided anything more than the routine service of allowing users to deposit funds in the PoolTogether protocol.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against Dharma with prejudice.

DATED: June 17, 2022

By: */s/ John P. Amato*
Jonathan H. Blavin (*admitted pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
(415) 512-4000

Erin J. Cox (*admitted pro hac vice*)
April Youpee-Roll (*admitted pro hac vice*)
Brandon Teachout (*admitted pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

John P. Amato
THOMPSON COBURN HAHN &
HESSEN LLP
488 Madison Ave #14
New York, NY  10022
(212) 478-7200

Attorneys for Defendants
OZONE NETWORKS, INC. and
DHARMA LABS, INC.