UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
JOSEPH KENT,

                  Plaintiff,

      -against-

POOLTOGETHER, INC.; DHARMA
LABS, INC.; OZONE NETWORKS,
INC.; LEIGHTON CUSACK; KAIN
WARWICK; STANISLAV
KULECHOV; DRAGONFLY DIGITAL
MANAGEMENT, LLC; NASCENT US,
LLC; NASCENT LIMITED
PARTNERSHIP; STICHTING MAVEN
11 FUNDS; GALAXY DIGITAL
TRADING HK LIMITED, LP; PARAFI
CAPITAL, LP; and COMPOUND
LABS, INC.,

                  Defendants.
-----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 21-CV-6025-FB-CLP

*Appearances:*
*For the Plaintiff:*
CHARLES GERSTEIN
Gerstein Harrow LLP
810 7th Street NE, Suite 301
Washington, DC 20003

JAMES CROOKS
Fairmark Partners, LLP
1499 Massachusetts Avenue NW, #113A
Washington, DC 20005

JASON HARROW
Gerstein Harrow LLP
3243B South La Cienega Boulevard
Los Angeles, California 90016

*For Defendant PoolTogether, Inc.:*
KEVIN P. BROUGHEL
Paul Hastings LLP
200 Park Avenue
New York, New York 10166

*For Defendants Dharma Labs, Inc.,*
*and Ozone Networks, Inc.:*
JOHN P. AMATO
Thomas Coburn Hahn & Hessen
LLP
488 Madison Avenue #14
New York, New York 10022

*For Defendant Leighton Cusack:*
ANDREW W. BLACKWELL
8182 Maryland Avenue, 15th Floor
St. Louis, Missouri 63105

*For Defendants Dragonfly Digital*
*Management, LLC, and Compound Labs,*
*Inc.,*
JASON GOTTLIEB
Morrison Cohen LLP
909 Third Avenue
New York, New York 10022

*For Defendants Nascent US, LLC, and*
*Nascent Limited Partnership:*
BRIAN E. KLEIN
Waymaker LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017

*For Defendants Stichting Maven 11 Funds,*
*Galaxy Digital Trading HK Limited, LP,*
*and ParaFi Capital, LP:*
SEAN HECKER
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118

**BLOCK, Senior District Judge:**

In this putative class action, Joseph Kent claims that he and thousands of others contributed cryptocurrency to an illegal lottery. He seeks to recover double the amount contributed, plus double his reasonable attorney's fees and costs, pursuant to New York law. Jurisdiction is premised on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

All of the defendants who have appeared in the action have moved to

dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); two have moved, in the alternative, to compel arbitration.  These motions present numerous issues, but the dispositive question is whether the plaintiff has alleged sufficient facts to establish his standing to sue under Article III.  Having reviewed the parties' submissions and heard oral argument on that issue, the Court holds that he has not.

## I

In 2019, Defendant Leighton Cusack and others wrote a piece of software (technically, a network protocol) for use on the Ethereum blockchain, a decentralized ledger of highly encrypted transactions involving various cryptocurrencies.  The protocol—dubbed PoolTogether—allows the owners of these secure digital assets to make their holdings available to "liquidity pools" for various investments.  These pools, in turn, use different protocols to lend out cryptocurrency at interest.  One such protocol was developed by Compound Labs, Inc. ("Compound").  Compound, which promotes PoolTogether on its website, retains a portion of the interest earned as a fee and pays the rest to PoolTogether.

Contributors using the PoolTogether protocol do not receive that interest directly.  Instead, they receive a "ticket" for every dollar's worth of cryptocurrency they contribute.  PoolTogether then randomly selects a predetermined number of

tickets and, after retaining a percentage of the interest received as a reserve, distributes the balance among the holders of the winning tickets.

In sum, contributors forgo a guaranteed interest rate in exchange for a chance at a greater return on their investment. Since its inception, PoolTogether has received about $122 million in contributions and paid approximately $4.3 million in prizes.

Contributions to PoolTogether may be withdrawn at any time. However, blockchains like Ethereum are labor- and resource-intensive. To recoup its operating costs, Ethereum charges what is colloquially referred to as a "gas fee" for every transaction. Such fees can be significant and only large contributions generate enough returns to offset them. To encourage smaller contributions, PoolTogether allows users to pool their contributions into "pods" that share the gas fees (but also the potential winnings).

Arrangements like PoolTogether are often described as "no-loss lotteries" because the underlying contributions are not distributed to winners, as they are in a typical lottery. Rather, they are used to generate the investment income that funds the awards. In that sense, PoolTogether is akin to a "prize-linked savings account," in which some of the interest earned is pooled and offered as chance-based prizes. But whereas such savings accounts are offered by financial

4

institutions subject to federal and state oversight, PoolTogether is largely

unregulated.  Unlike a bank, for example, its deposits are not guaranteed by the

Federal Deposit Insurance Corporation and there are no restrictions on the uses to

which it can put the contributions it receives.

Cusack and the other developers of the PoolTogether protocol formed

Defendant PoolTogether, Inc., in September 2019, but the corporation and the

protocol remain separate entities.  While PoolTogether, Inc., is run as a traditional

corporation, the protocol itself is governed by a decentralized autonomous

organization ("DAO"), which initially consisted of Cusack and his team, investors

in PoolTogether, Inc., and early users of the protocol.  In May 2021, Defendants

Dragonfly Digital Management, LLC, Nascent US, LLC, Nascent Limited

Partnership, Stichting Maven 11 Funds, Galaxy Digital Trading HK Limited, LP,

and ParaFi Capital, LP (collectively, the "Investor Defendants") acquired

ownership "tokens" (apparently akin to shares of stock) in exchange for $5.95

million.  According to the complaint, the DAO can "do with the protocol whatever

a holder of a majority of tokens wish[es] to do."  Second Amended Complaint

("SAC") ¶ 56.

Contributors can access PoolTogether on a website and through various

smartphone apps.  Defendant Dharma Labs, Inc. ("Dharma"), operated one such

5

app, which prominently advertised PoolTogether.  Although it charged its own user fees, Dharma could offer discounted "gas fees" by executing transactions collectively.  In January 2022, Dharma was acquired by Defendant Ozone Networks, Inc.

Plaintiff Joseph Kent is "gravely concerned that the cryptocurrency ecosystem—which requires the use of enormous amounts of electricity—is accelerating climate change and allowing people to evade financial regulations and scam consumers."  SAC ¶ 4.  He nevertheless chose to participate in that ecosystem.  On October 21, 2021, Kent visited the website "app.pooltogether.com" and delivered ten dollars' worth of cryptocurrency to the protocol.  In exchange, he received 10 tickets for a PoolTogether lottery with a prize of $778 and odds of 1:2,303.  The transaction incurred a "gas fee" of $265.60.

On January 17, 2022, Kent used the Dharma app to deliver another two dollars' worth of cryptocurrency to PoolTogether in exchange for two tickets in another lottery.  The complaint does not allege the prize or odds of that lottery but the transaction incurred a "gas fee" of $99.87 and a user fee of $2.70.

## II

The complaint frankly admits that Kent's main objections to PoolTogether are its environmental impact and lack of regulatory oversight.  His lawsuit,

6

however, is based on an entirely different premise.  Under New York law, "[a]ny person who shall purchase any share, interest, ticket, certificate of any share or interest, or part of a ticket, or any paper or instrument purporting to be a ticket or share or interest . . . in any portion of any lottery, may sue for and recover double the sum of money, and double the value of goods or things in action, which he may have paid or delivered in consideration of such purchase, with double costs of suit."  N.Y. Gen. Oblig. L. § 5-423.  "Any person who shall have paid any money, or valuable thing, for a chance or interest in any lottery or distribution, prohibited by the penal law, may sue for and recover the same of the person to whom such payment or delivery was made."  *Id.*

Invoking that statute, Kent demands—on behalf of himself and a proposed class of thousands of other contributors to the PoolTogether protocol—"[a]n award of compensatory damages against all Defendants jointly and severally in the amount of double the value of cryptocurrency that the class[ ]members delivered to PoolTogether or the PoolTogether protocol," plus "double the amount of reasonable attorneys' fees and costs of this Action."  SAC Prayer for Relief.

Thus, the central question on the merits of this lawsuit is whether the PoolTogether protocol constitutes an illegal lottery.  The defendants' motions to dismiss raise other ancillary issues, such as who is liable for a violation of the

statute and whether the statute contemplates secondary liability for aiding and
abetting or conspiracy.  Those questions are thorny and unanswered, and should
probably be resolved by the New York Court of Appeals.

But before the Court can even consider those questions, it must address its
subject-matter jurisdiction.  "For a court to pronounce upon the meaning . . . of a
state or federal law when it has no jurisdiction to do so is, by very definition, for a
court to act ultra vires."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-
02 (1998).  In that regard, all of the moving defendants challenge Kent's standing
to sue.[1]

Under Article III of the Constitution, federal courts have subject-matter
jurisdiction over only "Cases" and "Controversies."  "One element of the case-or-
controversy requirement is that [plaintiffs], based on their complaint, must
establish that they have standing to sue."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997)
(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury
in fact that is concrete, particularized, and actual or imminent; (ii) that the injury

---

[1]Six defendants additionally challenge the Court's personal jurisdiction over
them.  Federal courts have discretion to choose whether to address issues of
subject-matter jurisdiction before or after issues of personal jurisdiction.  *See
Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).  For obvious reasons,
it makes sense to address subject-matter jurisdiction first in this case.

was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560-61). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## A.    Injury in Fact

Kent acknowledges that he voluntarily contributed cryptocurrency to the PoolTogether protocol and, further, that he could have withdrawn (and, indeed, can still withdraw) his contributions. He argues, however, that his contributions earned interest and that the loss of that interest is sufficient to confer standing.[2]

Courts have long recognized the time value of money—the "incontrovertible [notion] that an obligation for a given amount due to-day is more valuable, by at least [the] current rate of interest, than an obligation for the same amount due one year hence, without interest." *Carl Co. v. Lennon*, 148 N.Y.S. 375, 377 (S. Ct.

---

[2]Kent briefly mentions that he risked losing his contributions and would incur "gas fees" if he withdrew them. *See* Pl.'s Mem. of Law at 61 n.14 (citing SAC ¶¶ 24, 38-43). He does not invoke either as a basis for standing and for good reason. Kent does not allege that his contributions actually lost value, thus making his risk of such loss merely "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (alterations and internal quotation marks omitted). The complaint further acknowledges that "gas fees" are charged by the Ethereum network; therefore, they are "the result of the independent action of some third party not before the court.". *Id.* (alterations and internal quotation marks omitted).

Niagara Cnty. 1914) (quoting *United States v. Fulkerson*, 74 F. 619, 630 (S.D. Cal. 1896)).  Although the Second Circuit has not spoken on the precise issue, several circuit courts have accepted the proposition that this value, if lost, constitutes an injury-in-fact.  *See Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) ("[W]e hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III."); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) ("The inability to have and use money to which a party is entitled is a concrete injury."); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.").

**B.     Causation**

Of course, the lost use must also satisfy the remaining elements of standing. With respect to causation, the loss must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (alterations and internal quotation marks omitted).  In the context of financial injury and loss of use, the plaintiff must be "entitled," *MSPA Claims 1*, 918 F.3d at 1318, to money that is "wrongfully withheld," *Habitat*, 607 F.3d at 457, by the defendants.  The defendants argue that Kent cannot demonstrate any such conduct.

As to contributions, they are correct because Kent "alleges he can withdraw

his funds and do what he wishes with them." PoolTogether, Inc.'s Mem. of Law at 15 (citing SAC ¶ 40). On the other hand, it is undisputed that Kent did not receive any interest earned on those contributions because it was either paid to winning tickets or, in the case of his second contribution, possibly held in reserve.

Whether the defendants *wrongfully* withheld interest from Kent, however, depends on whether he was entitled to it in the first place. His complaint contains no allegations that he was. His memorandum of law argues that "Kent's deposits accrued interest that, absent Defendants' illegal scheme, would have been paid to Kent," Pl.'s Mem. of Law at 58, but that would be true only if he it offered him a choice between receiving guaranteed interest or tickets for a chance at a higher return. On the contrary, the choice offered by the scheme, illegal or not, was between receiving tickets—which Kent admits he did—or not contributing to the protocol. As Kent recognizes elsewhere in his memorandum, the "relevant comparator" is "what would have happened to his money had he sent it directly to Compound, for indeed that is where his money went." *Id.* at 23.[3]

---

[3]Kent suggests that any dispute about his entitlement to interest from the protocol goes to the merits and, therefore, creates a case or controversy. *See* Pl.'s Mem. of Law at 61 ("Defendants believe [that the failure to pay Kent interest is] not unlawful; Kent argues it is."). That is incorrect. To prevail on the merits of his suit, Kent must show that the PoolTogether protocol is an illegal lottery. If he succeeds, he recovers twice the amount of his contributions, plus attorney's fees and costs. At no point does his claimed entitlement to interest enter into the

Crucially, the decision to deposit funds with PoolTogether or to send them directly to Compound (or, for that matter, to leave them in his digital wallet) belonged to Kent and Kent alone. The defendants did not coerce Kent into using the protocol and could not force him to withdraw his contributions from it.

It is true that "standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000) (internal quotation marks omitted). It has long been accepted, for example, that a plaintiff may intentionally create standing to test the lawfulness of a particular practice. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (holding plaintiff had standing to challenge "steering" under the Fair Housing Act). Just last year, the Supreme Court reaffirmed that there is no "exception to traceability for injuries that a party purposely incurs." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022)

Nevertheless, "even testers have to show that they have suffered an Article III injury in fact." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 n.3 (2d Cir. 2022). Senator Cruz's campaign committee suffered such an injury because its decision to delay repaying a loan from the candidate, though voluntary, subjected it to the threat of "genuine legal penalties" from the Federal Election Commission.

---

equation. Perhaps that is why his complaint does not contain any allegations on the subject.

*Cruz*, 142 S. Ct. 1647.  The plaintiff in *Havens* had standing because she received false information in response to her inquiry about the availability of various apartments; even though she had no intention of renting, she suffered a concrete injury to her "statutorily created right to truthful housing information."  455 U.S. at 374.[4]

By contrast, Kent has suffered no concrete harm at the hands of the defendants.  By his own admission, he can withdraw his contributions at any time and the fees that those transactions would incur are not imposed by the defendants. He has lost interest on those contributions but, for the reasons set forth above, that is a problem of his own making.  While "[n]ot every infirmity in the causal chain deprives a plaintiff of standing," the forgone interest is "so completely due to [Kent]'s own fault as to break the causal chain" between his claimed injury and the defendants' conduct.  *St. Pierre*, 208 F.3d at 402.

At oral argument, Kent pointed out that there are cases addressing the merits of § 5-423 and similar state statutes despite the fact that lotteries, whether legal or illegal, inherently involve a voluntary transaction.  Any state cases reaching the

---

[4]"*TransUnion* makes clear that a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing."  *Harty*, 28 F.4th at 444 (citing 141 S. Ct. 2205).  Whether *Havens* survives this pronouncement is an open question that may soon be resolved by the Supreme Court.  *See Laufer v. Acheson Hotels, Inc.*, 50 F.4th 259 (1st Cir. 2022), *cert granted*, 143 S. Ct. 1053 (2023). For now, it remains good law.

issue are irrelevant, however, because "the constraints of Article III do not apply to state courts." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989).

Plaintiffs in *federal* court "must come prepared to prove that they suffered concrete harm due to the [defendants'] violation of the relevant statutes." *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021). The only federal case cited by Kent—*Wilson v. PTT, LLC*, 351 F.Supp.3d 1325 (W.D. Wash 2018)—predates the Supreme Court's admonishment of "[n]o concrete harm; no standing," *TransUnion*, 141 S. Ct. at 2200, by more than two years. In fact, *Wilson* does not address standing at all. At best, it holds that the plaintiff lost something of value by wagering "virtual coins" on a gambling app. *See* 351 F. Supp. 3d at 1337 (citing *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018). But the plaintiff in *Wilson* purchased and lost those coins, *see id.* at 1330, unlike Kent, who retains the ability to withdraw his contributions.

## C.   Redressability

In any event, Kent's theory of standing also falters at the third step: redressability. To satisfy that element, the plaintiff must allege facts showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (alterations and internal quotation marks omitted). That outcome is more than speculative in this case; it is

14

impossible.

Recall that Kent's claimed injury is the loss of the interest that his contributions earned. Recall also that his means of vindicating that injury is § 5-423 of New York's General Obligations Law. The sole remedy provided by that statute is twice the "sum of money, [or] value of goods or things in action, which he may have paid or delivered in consideration" for his tickets (plus double attorney's fees and costs). *Id.* In other words, if Kent prevails, he will be entitled to twice the amount of his contributions, *not* the amount (doubled or otherwise) of the interest those contributions earned.

The injury that a plaintiff claims to have suffered must be the same injury he hopes to remedy by bringing suit in federal court. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107 (1998). Thus, the "mismatch between [Kent's] alleged injury and requested relief is fatal to establishing redressability." *Soule v. Conn. Ass'n of Schools, Inc.*, 57 F.4th 43, 52 (2d Cir. 2022).

### III

The requirement of an actual injury caused by the defendant and redressable by the court exists "to assure that the legal questions presented to the court will be

resolved, not in the rarified atmosphere of a debating society, but in a concrete

factual context conducive to a realistic appreciation of the consequences of judicial

action." *Valley Forge Christian Coll v. Americans United for Separation of

Church & State, Inc.*, 454 U.S. 464, 472 (1982).  As the Supreme Court has

recently reiterated, "Article III grants federal courts the power to redress harms that

defendants cause plaintiffs, not a freewheeling power to hold defendants

accountable for legal infractions." *TransUnion*, 141 S. Ct. at 2205 (internal

quotation marks omitted).  While Kent no doubt has genuine concerns about

PoolTogether—including its legality under New York law—a suit in federal court

is not an appropriate way to address them.

Therefore, the Court holds that Kent lacks standing to sue and, accordingly,

grants the defendants' motions to dismiss on that ground.  The alternative motions

to compel arbitration are denied as moot.  *See Deng v. Frequency Elecs., Inc.*, 2022

WL 16923999, at *10 (E.D.N.Y. Nov. 14, 2022) ("[I]t seems axiomatic that if the

Court lacks subject matter jurisdiction over a claim, it cannot refer that claim to

arbitration.").  Since the complaint must be dismissed without prejudice, *see

Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) ("[W]here a

complaint is dismissed for lack of Article III standing, the dismissal must be

without prejudice, rather than with prejudice."), Kent is free to pursue his claims in

16

state court, where Article III's limitations on standing do not apply.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 7, 2023

17